JOHN E. HYDE AND JOSEPH H. OGLESBY, TRADING UNDER THE NAME AND STYLE OF HYDE & OGLESBY, PLAINTIFFS IN ERROR, *v.* HENRY L. STONE.

Where a suit was brought upon a bill of exchange in one of the State courts of Louisiana, and by that court was transferred to another State court for the purpose of being connected with certain proceedings in insolvency, and this transfer was pleaded in bar in the Circuit Court of the United States to the prosecution of the suit in that court upon the bill, the plea was not good.

The jurisdiction of the courts of the United States over controversies between citizens of different States cannot be impaired by the laws of the States, which proscribe the modes of redress in their own courts, or which regulate the distribution of their judicial power.

The insertion of the bill amongst the debts of the insolvent upon his schedule, is evidence of the fact of notice; and the sufficiency of the evidence was a question for the jury, and is not subject to review in this court.

THIS case was brought up, by writ of error, from the Circuit Court of the United States for the eastern district of Louisiana.

On the 2d of January, 1850, Stone, being then in New Orleans, purchased from Hyde & Oglesby a bill of exchange, of which the following is a copy, with the notarial protest thereof.

$1,500.                    NEW ORLEANS, *January 2d*, 1850.

Sixty days after sight of this second of exchange, first unpaid, pay to the order of ourselves fifteen hundred dollars, value received, which place to account W. Barton, as advised.

HYDE & OGLESBY.

*To P. Frothingham, Esq., Boston.*

Endorsed: Pay H. L. STONE.
                    HYDE & OGLESBY.
                    H. L. STONE,
          By H. W. HERBERT, *Att'y.*
[Acceptance on face:]   January 15, 1850.

PETER FROTHINGHAM.

COMMONWEALTH OF MASSACHUSETTS,

*Suffolk, City of Boston, ss:*

On this nineteenth day of March, in the year of our Lord one thousand eight hundred and fifty, I, Henry Clark, notary public, by legal authority admitted and sworn, and dwelling in the city of Boston, at the request of J. J. Loving, Esq., cashier North Bank of Boston, went with the original bill of exchange, of which the foregoing is a true copy, to the counting-room, in this city, of Peter Frothingham, the acceptor, and presenting said bill to him, demanded payment thereof,

the time therein limited and grace having elapsed, to which he answered, that said bill would not be paid.

I sent notice of the non-payment thereof to the drawers and first endorsers, requiring payment of them, by mail, to New Orleans.

Wherefore I, the said notary, at the request aforesaid, have protested, and by these presents do solemnly protest, against the drawers of said bill, and endorsers, acceptor, and all others concerned therein, for exchange, re-exchange, and all costs, charges, damages, and interest, suffered and sustained, or to be suffered and sustained, by reason or in consequence of the non-payment of said bill.

Thus done and protested, in Boston aforesaid, and my notarial seal affixed, the day and year last written.

(Signed)         HENRY CLARK, [seal.]
*Notary Public.*

Stone brought suit upon this bill in the fifth District Court of New Orleans, in March, 1853; whereupon, the defendants filed an exception to the jurisdiction of the court, upon the ground that they had previously made a surrender of their property to their creditors in the third District Court of New Orleans, and that all proceedings were stayed against them. The exception further stated that the plaintiff was put upon their schedule as a creditor; wherefore they prayed that the suit of plaintiff be transferred and cumulated with the insolvency proceedings in the third District Court of New Orleans.

On the 31st of May, 1853, the fifth District Court sustained the exception, and ordered the costs to be paid out of the mass of property surrendered.

On the 1st of May, 1854, Stone brought his action in the Circuit Court of the United States.

The defendants pleaded in abatement, that Stone was a citizen of Louisiana, and therefore incompetent to sue in the Federal court, and in bar that the question had become *res judicata* by the maintenance of the exception in the fifth District Court. The case went to trial upon an agreed statement of facts, whereof those recited above are the most material; and at November term, 1855, the court gave judgment for the plaintiff. The defendants brought the case to this court by a writ of error.

It was argued by *Mr. Benjamin* for the plaintiffs in error, and *Mr. Taylor* for the defendant.

The argument of *Mr. Benjamin* upon the effect of the proceed-

ings in insolvency is omitted, because the court did not think that question was raised by the record in the case. His point with regard to the notice of the dishonor of the bill was thus stated:

I. The defendants are discharged from responsibility as drawers and endorsers of the bill, by reason of the laches of the holder, in failing to give notice of non-payment.

The law of Louisiana on this subject has reference exclusively to protests made by notaries of that State. (Acts of 1855, p. 48.)

By the law merchant, it is clear, without citation or authorities, that the protest of a foreign bill of exchange is not legal evidence of any other fact than that of presentment and refusal to pay. A statement volunteered by the notary, that he put into the post office a notice of protest to the drawer, is not legal evidence of the fact.

Even if the law of Louisiana were applicable to the case under consideration, the evidence is insufficient. The protest, as annexed to the petition, and made part of it, shows that it is not such a protest as is alone permitted by that law to be received as proof of notice. It is not signed by two witnesses. (McAfee *v.* Doremus, 5 How., 53.)

II. In the absence of proof of notice, an attempt is made to fasten responsibility on defendants by proof of waiver of notice.

The waiver is said to result from the acknowledgment of the debt set forth in the eighth article of the statement of facts.

To this presumption of waiver there are two fatal objections:

The first is, that it is nowhere stated at what *date* the acknowledgment was made. If the schedule of insolvency was filed *before* the maturity of the bill, (and there is no proof of the contrary,) it was still the duty of insolvents to place the bill on their schedule as a debt due by them, and to put the name of the holder, if known, in the list of creditors. (Bainbridge *v.* Clay, 3 Martin's U. S., 262; Deslix *v.* Schmidt, 18 Louisiana Rep., 466.)

The second is, that an acknowledgment of the indebtedness, if it ever can be considered to amount to a waiver of laches, is confined to cases where the party making the acknowledgment knew of the laches. The proof of his knowledge of the laches must be clear, or no waiver will be presumed. (Story on Notes, secs. 362, 363, and notes; Story on Bills, sec. 320; Chitty on Bills, p. 500, Am. edi., 1842; Thornton *v.* Wynn, 12 Wheat., 183.)

In Louisiana, the doctrine is extremely rigid. (See the cases and principles collected in Hennen's Digest, Verbo, Bills and Notes, XI.)

*Mr. Taylor*, for the defendant in error, made the following points:

I. The judgment on the exceptions filed in the case in the third District Court of New Orleans, in the State of Louisiana, was not a final judgment, and is no bar to any other proceedings on the cause of action set up in the case.

II. The fact that H. L. Stone, the plaintiff in the court below, was a citizen of Massachusetts, proved on the trial, and that the bill of exchange sued on was bought by him individually, and with his personal funds, as shown by the statement of facts agreed to and signed by the parties, gave the Circuit Court of the United States jurisdiction. (Constitution U. S.)

III. The defendant in error, H. L. Stone, performed no act to make himself a party to the proceedings in insolvency in the third District Court of New Orleans.

IV. The plaintiffs in error are legally bound to pay H. L. Stone the amount of the bill of exchange sued on, because, first, legal notice of its protest for non-payment was given them; and, second, they acknowledged it to be due and owing by them in their schedule filed in the proceedings in their insolvency. (Shed *v.* Brott, 1 Pick., 401.)

Mr. Justice CAMPBELL delivered the opinion of the court.

The defendant in error instituted his suit in the Circuit Court, as the endorsee of a bill of exchange, payable in Boston, of which the plaintiffs in error were drawers, payees, and endorsers, and which bears date at New Orleans.

The defendants answered the petition, and averred that the plaintiff was a citizen of Louisiana, and the said bill of exchange a Louisiana contract, and governed by the law of that State. That the plaintiff resided in Louisiana when the defendants surrendered their property in insolvency in the third District Court of New Orleans, and to the proceedings therein the plaintiff became a party. That, subsequently thereto, the said plaintiff instituted a suit on the said bill of exchange in the fifth District Court of that city; and, on an exception filed by the defendants, informing that court of those facts, the same was sustained, and the said suit was transferred to the third District Court of New Orleans, and made part of the aforesaid insolvent proceedings therein; by which the right of plaintiff to have and maintain this action in the Circuit Court is barred, and the question has become *res judicata*.

With this exception to the jurisdiction of the court, the defendants filed a general denial of their indebtedness to the plaintiff. The cause was submitted to the Circuit Court upon

an agreed statement, and judgment was rendered for the plaintiff without the intervention of a jury.

From that statement it appears that the bill was duly protested for non-payment; and the notary in Boston certifies, "I sent notice of the non-payment to the drawers and first endorsers, requiring payment of them, by mail, to New Orleans, on the day of the protest." That the plaintiff has always been a citizen of Massachusetts; that his family resided there, and he had a commercial establishment there; that he is a partner in a commercial establishment at New Orleans, and generally spent a portion of the winter months in that city, and then returned to Massachusetts; and that this bill was purchased in the city of New Orleans, on his own account. It further appears that the plaintiff, before the commencement of this suit, sued the defendant in the fifth District Court of New Orleans, on this bill; that the defendant appeared and answered that the fifth District Court had no jurisdiction, because the defendant had made a surrender of his property to his creditors in the third District Court of New Orleans, which surrender had been accepted, and all proceedings stayed against him; and that the plaintiff was put upon his schedule as a creditor; and he prayed that the suit of the plaintiff be transferred and cumulated with the insolvency proceedings in the third District Court in New Orleans; that thereupon the fifth District Court, before the commencement of the present suit, decreed that the exception herein filed be maintained, and the costs paid out of the mass of the property surrendered. It further appears that the plaintiff performed no act to make himself a party to the proceedings in insolvency in the third District Court, and that no notice of those proceedings had ever been served on him; but that the bill of exchange described in his petition was enumerated among his debts, and the firm of H. L. Stone & Co., of New Orleans, which was supposed to be the holder of the bill, was placed on the schedule among the other creditors of the insolvents.

The question whether a foreign bill of exchange, sold by a merchant in New Orleans to a person who has a commercial house there, but whose domicil is at the place where the bill is payable, and where he resided when the proceedings in insolvency were instituted, is affected by them when he does not make himself a party to those proceedings, is not involved in this case. The defendant did not plead the pendency of those proceedings, or the decree of the third District Court, as a bar to the present suit, or afford any proper description of them to raise that question. The exception of the defendant is, that certain proceedings pending in the third District Court were

successfully pleaded in the fifth District Court of New Orleans, as a cause for the removal of a suit commenced by the plaintiffs against the defendants in that court to the other, and that the decision of the fifth District Court upon that plea ought to preclude the plaintiff from maintaining this suit in the Circuit Court of the United States. But this court has repeatedly decided that the jurisdiction of the courts of the United States over controversies between citizens of different States cannot be impaired by the laws of the States, which prescribe the modes of redress in their courts, or which regulate the distribution of their judicial power. In many cases, State laws form a rule of decision for the courts of the United States, and the forms of proceeding in these courts have been assimilated to those of the States, either by legislative enactment or by their own rules. But the courts of the United States are bound to proceed to judgment, and to afford redress to suitors before them, in every case to which their jurisdiction extends. They cannot abdicate their authority or duty in any case in favor of another jurisdiction. (Suydam *v.* Broadnax, 14 Pet., 67; Union Bank *v.* Jolly, Adm'r, 18 How., 503.)

It follows, therefore, that the decision of the fifth District Court of New Orleans, transferring the suit, commenced by the plaintiff on his bill against the defendants, in that court, and directing it to be cumulated with the proceedings in bankruptcy which were pending in another court of the State, did not disable the plaintiff from commencing a suit in the Circuit Court, nor can it form a proper declinatory exception to its jurisdiction.

The plaintiffs in error object, that the evidence before the Circuit Court did not authorize the court to infer that they had notice of the dishonor of their bill. The notary states that he sent a notice to them, at New Orleans, on the day that the protest was made. In addition to this evidence, it is shown that the bill, after its maturity, was enumerated among the debts of the plaintiff in error, on the schedule that was returned to the third District Court; and that they successfully pleaded their return to the prosecution of a suit by the defendant in error in another court. A plaintiff may prove, by admissions of a defendant, that all the steps necessary to charge him as an endorser or drawer of a bill of exchange have been taken. Proof of a direct or conditional promise to pay after a bill becomes due, or of a partial payment, or of an offer of a composition, or of an acknowledgment of his liability to pay the bill, has been held to be competent evidence to go to a jury, of a regular notice of the dishonor of a bill, and to warrant a jury in presuming that a regular notice had been given.

(Thornton *v.* Wynn, 12 Wheat., 183; Rogers *v.* Stevens, 2 T. R., 713; Patterson *v.* Beecher, 6 J. B. Moore, 319; Campbell *v.* Webster, 2 M. G. Sc., 253; Union Bank *v.* Grimshaw, 15 La., 321; 3 Mort. N. S., 318.) The effect of such evidence in the particular case must be determined by the jury, and their decision cannot be reviewed by an appellate court. In the present case, the matter of fact was submitted to the Circuit Court, and its determination on this subject cannot form the ground of an exception here.

Judgment affirmed.