MORRILL et al. v. AMERICAN RESERVE BOND CO. OF KENTUCKY et al.

(Circuit Court, W. D. Missouri, C. D. January 10, 1907.)

No. 2,307.

1. TRUSTS—ENFORCEMENT—EQUITY—JURISDICTION.

Every cestui que trust is entitled to the aid of a court of equity to avail himself of the benefit of the trust, and the forbearance of the trustee may not prejudice him.

2. COURTS—JURISDICTION OF FEDERAL COURTS—SUIT AGAINST STATE.

A suit against a state officer, which involves the pecuniary interest of the st... 'o restrain or direct the action of the officer in a matter intrusted to his ow. l discretion, is a suit against the state itself, of which the natio' .' .urts have no jurisdiction, but a suit to enjoin or direct a state office. the performance of an official act which requires the exercise of no discretion and involves no pecuniary interest of the state, and no violation of a positive statute thereof indicative of its public policy, is not a suit against a state, and any qualified citizen of another state may maintain such a suit in a federal court; and a suit of this nature may be maintained even when its determination involves the pecuniary interest of the state if the act of the officer is purely ministerial, or to restrain official action in pursuance of an unconstitutional statute, or without lawful authority, and to recover damages for such action.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 13, Courts, § 844½.

Federal jurisdiction of suits against state, see note to Tindall v. Wesley, 45 C. C. A. 165.]

3. SAME.

Where corporations were required by a state statute to deposit securities with the State Treasurer to insure performance of their contracts, and the corporations have become insolvent, a suit by creditors entitled to the benefit of the securities to require the State Treasurer to turn the same over to receivers, to be disposed of for the benefit of complainants and all others entitled to share therein, is not a suit against the state, and for that reason without the jurisdiction of a federal court.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 13, Courts, § 844½.]

4. CORPORATIONS—INSOLVENCY OF BOND COMPANY—REMEDY OF CREDITOR UNDER MISSOURI STATUTE.

Act Mo. April 21, 1893 (Laws 1893, p. 121), requires bond investment companies selling bonds, certificates, or debentures on the installment or partial-payment plan to deposit securities with the State Treasurer for

151 F.—20

the protection of investors in such bonds. Section 4 provides that, in case of the failure of any such company, a circuit court of the state, on the application of one or more bondholders, shall appoint a receiver to wind up its affairs and liquidate its debts, using therefor the deposit with the State Treasurer, who is required to pay out the same on the order of the court. Act March 26, 1897 (Laws Mo. 1897, p. 90), contains similar provisions for the deposit of securities by such companies, and also provides that, when domestic, they shall be under the supervision of the supervisor of building and loan associations, and, on their failure to make or maintain the deposit, they shall be proceeded against for forfeiture of their charter at his relation by the Attorney General. It further repeals all acts and parts of acts inconsistent therewith. *Held*, that such act did not repeal section 4 of the act of 1893 and make the remedy by proceedings instituted by the Attorney General exclusive, but left the remedy provided by said section 4 open and effective to bondholders in case of the insolvency of a company, without requiring that such suits should be instituted, conducted, or controlled by the Attorney General.

5. COURTS—JURISDICTION OF FEDERAL COURTS—ENFORCEMENT OF TRUSTS.

Where a state statute required a corporation to deposit securities with the State Treasurer for the protection of creditors, and authorized the latter on its insolvency to maintain a suit in a state court to avail themselves of such securities, such creditors who are qualified citizens of another state have the right to enforce such remedy and the trust created for their benefit in a federal court, and such court under its plenary jurisdiction as a court of equity to enforce trusts has power to take the securities into its own hands for administration at any stage of the suit when it deems such action for the best interest of the beneficiaries. [Ed. Note.— For cases in point, see Cent. Dig. vol. 13, Courts, §§ 972, 973.]

6. SAME—FEDERAL AND STATE COURTS—PRIORITY OF JURISDICTION.

A state statute required bond companies issuing bonds on the installment or partial-payment plan to deposit securities with the State Treasurer to protect their bondholders, and, in case of the insolvency of any such company, authorized one or more of such bondholders to institute a suit for a receiver who should wind up the affairs of the company, and be entitled, on an order of the court, to the bonds in the hands of the Treasurer. A single bondholder of such a company instituted a suit in a state court against the company and the State Treasurer to require the latter to pay the amount due him from the deposit. No receiver was prayed for nor appointed, nor was any action taken by the court, to obtain possession of the securities in the hands of the Treasurer. *Held*, that such court did not acquire custody or control of such securities so as to deprive a federal court of jurisdiction to take possession of and administer the same through its receiver for the benefit of all bondholders in a subsequent suit by other bondholders to wind up the affairs of the company as an insolvent in conformity to the statute. [Ed. Note.—For cases in point, see Cent. Dig. vol. 13, Courts, §§ 1345–1347, 1349.]

7. RECEIVERS—APPOINTMENT BY FEDERAL COURTS—PROPERTY IN ANOTHER DISTRICT.

A receiver appointed by a federal court of one district has no power to take possession of property in another district, and his appointment for that purpose does not affect the right or power of the court in the district where the property is to take possession of the same through its own receiver. [Ed. Note.—For cases in point, see Cent. Dig. vol. 42, Receivers, §§ 409, 411.]

In Equity. On motion by receiver.

W. H. Allen, C. B. Allen, and W. G. Carpenter, for complainants F. M. Wilcox and others.

I. J. Ringolsky and James Rosenthal, for complainants Morrill and others.

Lessing Rosenthal, for receiver Western Trust & Savings Bank.

E. R. and R. E. Rombauer, for complainants Sewell and others.

Clinton Rowell and J. H. Zeumbalen, for receiver Mississippi Valley Trust Company.

Herbert S. Hadley, Benjamin Schnurmacher, and Theodore F. Rassieur, for the State Treasurer, Attorney General, and supervisor of bond investment companies of the state of Missouri.

Karnes, New & Krauthoff, for certain bondholders.

Nagel & Kirby, for J. C. Rogers, Kentucky receiver.

J. Erb and Clarence T. Case, for defendant companies.

Before SANBORN and HOOK, Circuit Judges.

SANBORN, Circuit Judge. The receiver herein has presented a motion which all parties to this suit, except the defendants Jacob F. Gmelich, the Treasurer of the state of Missouri, Herbert S. Hadley, the Attorney General of the state, and William L. Watkins, the supervisor of bond investment companies of the state, urge this court to grant to the effect that an order be made that Joseph F. Gmelich, the State Treasurer, deliver to the receiver herein the securities deposited with him by the defendant corporations to secure the claims of the complainants, to the end that the receiver may collect, liquidate, and distribute the trust property. The Attorney General and Messrs. Benjamin Schnurmacher and Theodore F. Rassieur, his associates, speaking for the three officers of the state, say that, as this court has jurisdiction of the subject-matter and of the parties to this suit, they prefer to bring this property to, and place it in the hands of, this court for administration and distribution, unless the legislation of the state has given them mandatory instructions to do otherwise. They call attention to the nature of the suit and to the legislation of the state of Missouri with reference to the securities which constitute the trust property, and request the decision of certain questions which are now to be considered prior to the disposition of this motion.

The three defendant corporations deposited in the aggregate bonds, mortgages, and other securities of the face value of about $1,050,000 with Gmelich, the State Treasurer of Missouri, under article 19, § 1536, of the Revised Statutes of Missouri of 1899, to secure the holders of bonds which these corporations issued the payment of the amounts of money which they thereby promised to return to them. The corporations ceased to do business and became insolvent. The complainants, who were holders of bonds of these corporations to the requisite amounts and citizens and residents of the state of Illinois, brought this suit on behalf of themselves and all others similarly situated against the defendants named in the title to this opinion, who were residents and citizens of other states, to enforce the trust created by the deposit of the bonds, notes, and mortgages with the State Treasurer for their benefit. This is, therefore, a suit by cestuis que trust against the trustee, the custodian of this property, and the debtors who pledged it to enforce the execution of the trust created by the deposit of these obligations to secure the claims of the complainants.

The enforcement of trusts is one of the immemorial heads of equity jurisprudence, and the nature of this suit, the diversity of citizenship,

the amounts in controversy, and the presence of the trust property within this district bring it far within the jurisdiction of this court sitting in equity, and no judgment or execution returned nulla bona thereon upon the claims of the complainants was requisite to sustain it. Every cestui que trust is entitled to the aid of a court of equity to avail himself of the benefit of the trust, and the forbearance of the trustee may not prejudice him. Lechmere v. Carlisle, 3 P. Wms. 211, 222; Russell v. Clarke's Executors, 7 Cranch, 69, 97, 3 L. Ed. 271; Rodney v. Schankland, 1 Del. Ch. 35, 12 Am. Dec. 70, 74; Hayden v. Thompson, 71 Fed. 60, 63, 17 C. C. A. 592, 595; Darragh v. H. Wetter Mfg. Co., 78 Fed. 7, 14, 15, 23 C. C. A. 609, 616; Memphis Sav. Bank v. Houchens, 115 Fed. 96, 106, 52 C. C. A. 176, 186; Missouri Broom Mfg. Co. v. Guymon, 115 Fed. 112, 116, 53 C. C. A. 16, 20; Schofield v. Ute Coal & Coke Co., 92 Fed. 269, 271, 34 C. C. A. 334, 336. The statutes of the state of Missouri required the defendant corporations, as a condition of conducting their business in the state, to deposit the trust property in the hands of the State Treasurer to secure the payment of their bonds; and the deposits under consideration were made in compliance with this legislation. This is a suit to take these deposits from the possession of the Treasurer, to convert them into money, and to distribute this money among the cestuis que trust to whom it belongs. The judicial power of the United States does not extend to suits by citizens against states. Amendments to the Constitution, art. 11. Is this a suit against the state of Missouri?

A state can act only through its agents. But not every suit against an officer of a state is a suit against the state itself. A suit against a state officer, which involves the pecuniary interest of a state, to restrain or direct the action of the officer in a matter intrusted to his official discretion, is a suit against the state itself, of which the national courts have no jurisdiction. Board v. McComb, 92 U. S. 531, 541, 23 L. Ed. 623; Louisiana v. Jumel, 107 U. S. 711, 720, 723, 2 Sup. Ct. 128, 27 L. Ed. 448; Cunningham v. Railroad Co., 109 U. S. 446, 457, 477, 3 Sup. Ct. 292, 609, 27 L. Ed. 992; In re Ayres, 123 U. S. 443, 497, 506, 8 Sup. Ct. 164, 31 L. Ed. 216; Fitts v. McGhee, 172 U. S. 516.[1] But a suit to enjoin or direct a state officer in the performance of an official act which requires the exercise of no discretion, and involves no pecuniary interest of the state and no violation of a positive statute thereof indicative of its public policy, is not a suit against a state, and any qualified citizen of another state may maintain such a suit in a federal court. A suit of this nature may be maintained even when its determination involves the pecuniary interest of the state if the act of the officer is purely ministerial. Rolston v. Missouri Fund Com'rs, 120 U. S. 390, 411, 7 Sup. Ct. 599, 30 L. Ed. 721; Clark v. Barnard, 108 U. S. 436, 447, 2 Sup. Ct. 878, 27 L. Ed. 780; Seibert v. Lewis, 122 U. S. 284, 7 Sup. Ct. 1190, 30 L. Ed. 1161. Such a suit may also be maintained to restrain official action in pursuance of an unconstitutional statute or without lawful authority and to recover damages for official action of this nature. Reagan v. Trust Co., 154 U. S. 362, 14 Sup. Ct. 1047, 38 L. Ed. 1014; Smyth v. Ames, 169 U. S. 466, 18 Sup. Ct. 418, 42 L. Ed. 819.

[1] 19 Sup. Ct. 269, 43 L. Ed. 535.

In Louisiana v. Jumel the holders of certain bonds and coupons issued by the state of Louisiana brought suit against certain officers of the state to compel them to pay to the complainants in satisfaction of the coupons moneys in the treasury of the state derived from taxes which had been levied and collected pursuant to a contract between the state and the coupon holders to pay the complainants. But the state had subsequently, by a new Constitution, prohibited the officer in custody of these moneys from applying them to the payment of these coupons, and had appropriated them to the payment of the expenses of the state government. The suit, therefore, was in effect an action for specific performance of contracts of the state with the complainants, and the state was the real party in interest as a defendant. For that reason the Supreme Court dismissed the action, and said of the proceeds of the taxes collected to pay the coupons:

"The money in the treasury is the property of the state, and not in any legal sense the property of the bond or coupon holders. If it be lost or destroyed, the loss will fall alone on the state or its agents, and the bondholders will be entitled to payment in full from other sources." 107 U. S. 720, 2 Sup. Ct. 128, 27 L. Ed. 448.

It is not so in the case under consideration. The securities here in question are not the property of the state, and it has no interest in them. The entire beneficial ownership in them is in the complainants and in the other bondholders of the defendant corporations. If these securities are lost or destroyed, the loss will not fall on the state or on its officers in whose custody these securities are, and the bondholders will be entitled to no payment by the state from other sources of its revenue. The case of In re Ayres, 123 U. S. 443, 8 Sup. Ct. 164, 31 L. Ed. 216, was of the same nature, and it deservedly met the same fate. It was a suit to enjoin the Attorney General and two commonwealth attorneys from prosecuting suits in the name and for the use of the state to collect delinquent taxes. It was brought by the delinquent taxpayers, upon the ground that they had tendered payment of their taxes in tax-receivable coupons cut from bonds of the state in accordance with their contract with it. The court held that in legal effect this was an action against the state by holders of its coupons to enforce its contract with them.

On the other hand, in Rolston v. Missouri Fund Com'rs, 120 U. S. 390, 7 Sup. Ct. 599, 30 L. Ed. 721, the trustees for the second mortgage bondholders of a railroad company brought a suit against certain officers of the state of Missouri to enjoin them from foreclosing prior statutory liens held by the state, on the ground that these liens had been purchased by the complainants and they were entitled to assignments of them. The court sustained the suit, found the balance required to be paid by the complainants to entitle them to the assignments, held that it had jurisdiction to compel the Governor of the state to execute them, and, distinguishing this case from that of Jumel, said:

"There the effort was to compel a state officer to do what a statute prohibited him from doing. Here the suit is to get a state officer to do what a statute requires of him. The litigation is with the officer, not the state. The law makes it his duty to assign the liens in question to the trustees when they make a certain payment. * * * If it has been made, the trustees are

entitled to their decree. If it has not, a decree in their favor, as the case now stands, must be denied; but as the parties are all before the court, and the suit is in equity, it may be retained so as to determine what the trustees must do in order to fulfil the law, and under what circumstances the Governor can be compelled to execute the assignment." Page 411 of 120 U. S., page 610 of 7 Sup. Ct. (30 L. Ed. 721).

No case has been cited, none has been discovered, in which the Supreme Court has ever held that a suit against an officer of a state was a suit against the state in which the state was not either pecuniarily interested, or the execution of some positive statute which evidenced its public policy was not directly involved, so that the real party in interest as a defendant was the state, and was not the officer. Moreover, in the cases in the Supreme Court which have not been sustained because they were against a state that court has again and again announced the rule which it declared in Board v. McComb, 92 U. S. 531, 541, 23 L. Ed. 623, that suits against state officers either to arrest or direct their official action in matters ministerial in which the complainants have a pecuniary interest and the state has none are not suits against the state, and are within the jurisdiction of the federal courts. In re Ayres, 123 U. S. 506, 8 Sup. Ct. 164, 31 L. Ed. 216; Fitts v. McGhee, 172 U. S. 528, 19 Sup. Ct. 269, 43 L. Ed. 535.

This is a suit by bondholders of these insolvent defendant corporations to foreclose the pledge which they made to secure the payment of the complainants' bonds, to enforce the trust imposed upon the Treasurer of the state by their deposit with him, and to liquidate the affairs of these corporations. No statute or law of the state prohibits the relief which the complainants seek. Neither the state nor the State Treasurer has any interest in the trust property or in the event of this proceeding. No disposition of it can entail either loss or gain upon the state or upon any of its officers. The only parties to it who have any right to or interest in the suit itself, or in the trust property which is its subject, are the defendant corporations and their creditors. State ex rel. v. Stephens, 136 Mo. 537, 547, 37 S. W. 506; Glover v. Bond Investment Co., 138 Mo. 408, 40 S. W. 110. It is not, therefore, a suit against the state, and it falls far without the ban of article 11 of the amendments to the Constitution. Lewis v. American Sav. & Loan Ass'n, 98 Wis. 203, 73 N. W. 793, 39 L. R. A. 559.

The statutes of the state of Missouri pertinent to the questions presented in this case consist of Act April 21, 1893 (Laws Mo. 1893, p. 121), and of Act March 26, 1897 (Laws Mo. 1897, p. 90). The title of the first act is:

"An act to regulate bond investment companies and companies organized to place or sell bonds, certificates or debentures on the installment or partial payment plan."

The title of the second act includes that of the first act, and "to prescribe the amount and kind of deposit * * * powers of supervisor of building and loan associations to examine affairs of such companies, * * * mode and manner of procedure against court jurisdiction and to repeal all acts or parts of acts inconsistent with this act." The act of 1893 requires every bond investment company to deposit certain securities with the State Treasurer "for the protection of the

investors in such bonds, certificates or debentures." Section 1. It provides that if any such company fails to make the required deposit, it shall forfeit its charter, and the prosecuting attorney shall bring suit before the circuit court for such forfeiture, and the court may appoint a receiver for the company, whose duty it shall be to distribute to the shareholders the assets of the company. Section 2. The third section is not material here. The fourth section enacts that:

"In case of the failure of any company covered by this act, the circuit court of the county or city in which the principal office is located, upon the application of one or more shareholders, shall appoint a receiver for such company, whose duty it shall be to wind up its affairs, liquidate its debts and distribute its assets, using therefor, upon the order of the court, the deposit previously made, to secure the shareholders, with the State Treasurer; and the State Treasurer is hereby authorized to pay out such deposit in accordance with requisitions made upon the state auditor by said receiver and approved by the court, upon the warrant of the State Auditor."

It is evident that the "shareholders" mentioned in section 4 are the "investors in such bonds, certificates or debentures" specified in section 1 of this act, and that they include the bondholders of these companies. The act of 1897 provides that every bond investment company organized to place and sell bonds, certificates, or debentures on the partial-payment, or installment plan shall be required to deposit certain securities with the State Treasurer for the protection of the investors in such bonds, certificates, or debentures (section 1); that, if any company being a domestic corporation fails to make the deposit as required, it shall be proceeded against as thereinafter provided (section 2); that the supervisor of building and loan associations shall have power to examine into the affairs of these companies as provided by law for the examination of building and loan associations (section 3); that "proceedings instituted under the provisions of this act shall be conducted by the Attorney General of the state, and in the name of the state of Missouri as plaintiff, at the relation of said supervisor," and that the jurisdiction of the circuit court and the proceedings had in the cases instituted under this act shall be the same as are provided by law for the winding up and dissolution of insurance companies so far as such provisions of law are applicable (section 4); and "that all acts and parts of acts inconsistent with this act are hereby repealed" (section 5). No provision of these acts or of any statute of the state of Missouri grants any authority to the Treasurer or any other officer of the state to convert into money, to determine the rights of claimants to, or to distribute among the rightful claimants any of these deposits or of their proceeds. The only authority granted to the Treasurer is the power to hold them for the benefit of the cestuis que trust until the insolvency of the companies or the forfeiture of their charters.

Did the passage of the act of 1897 repeal the provisions of section 4 of the act of 1893, make the remedy by proceedings instituted by the Attorney General at the relation of the supervisor under section 4 of the act of 1897 exclusive, and thus deprive the shareholders or bondholders of these insolvent investment companies of the right to institute and maintain suits in the courts of the state of Missouri to liquidate the affairs of those corporations and distribute the deposits with the

State Treasurer for their benefit granted to them by section 4 of the act of 1893? The acts of 1893 and 1897 were not revised and re-enacted, but they were collated by the committee pursuant to section 4191 of the Revised Statutes 1899, and embodied in sections 1536, 1537, 1538, 1539, 1540, and 1541. In the act of collation the committee embodied section 4 of the law of 1893 in section 1539 of the Revised Statutes, changed the word "act," in section 4 of the law of 1897, to the word "article," embodied this section thus changed in section 1541, and placed all the provisions of both acts in article 19. But the committee was prohibited from changing the acts of the Legislature by its work of collation (section 4191), and these statutes still have the same meaning and legal effect that they would have had if they had been written into the Revision of 1899 in ipsissimis verbis. Paddock v. Missouri Pac. R. Co., 155 Mo. 524, 534, 56 S. W. 453. Section 4 of the act of 1893 gave the bondholders of those corporations when insolvent the right to maintain a suit to convert the deposits with the State Treasurer into money and to liquidate the affairs of the corporations. Section 4 of the act of 1897 granted to the state the right to institute proceedings in its courts to forfeit the charters of these corporations and to liquidate their affairs in case they failed to make the requisite deposits, and it empowered the Attorney General to conduct these proceedings at the relation of the supervisor of building and loan associations. But the power granted to the state and to the Attorney General by the act of 1897 was limited to proceedings instituted under the provisions of that act, and the only proceedings authorized by that act were for a forfeiture of the charters of the corporations for a failure to make or to keep good their deposits. Repeals which strike down the rights or remedies of citizens are not lightly implied. The grant of the right to the bondholders by the act of 1893 to maintain suits to liquidate the affairs of the corporations in case they became insolvent and to use the deposits with the State Treasurer for that purpose is not inconsistent with the grant of the right to the state, the Attorney General, and the supervisor to annul the charters of the corporations for a failure to keep good their deposits and to liquidate their affairs granted by the act of 1897; and for that reason the former grant cannot be held to be repealed by the latter, and the bondholders still have the power to maintain suits in the courts of the state of Missouri under section 4 of the act of 1893. It is the proceeding by the act of 1897, the proceeding to forfeit the charters, which that act requires the Attorney General and the supervisor to conduct, and not the suits of the bondholders under section 4 of the act of 1893. That the committee for the collation of the statutes was of this opinion is demonstrated by the fact that they embodied the latter section in section 1539 of the Revised Statutes. The conclusion is that the right was granted to bondholders by the act of 1893 to institute and maintain suits in the courts of Missouri, to convert into money, and distribute the securities deposited with the Treasurer by the insolvent bond investment companies for their benefit. This grant was not repealed or impaired by the act of 1897. The proceeding by the Attorney General to forfeit the charters of such companies authorized by that act is not exclusive, and the statutes of Missouri do not direct or require the Attorney

General or the supervisor of bond investment companies to institute, conduct, or control the suits by the bondholders authorized by the act of 1893.

Under legislation similar to that in Missouri under consideration the courts of the state of New York have held that jurisdiction is not conferred upon them in suits of the nature of that in hand to transfer deposited securities from the state officer who holds their custody for the benefit of policy holders of insurance companies to receivers appointed by the courts for the purposes of liquidation and distribution, but that the limit of their power is to adjudicate the claims presented to them and to direct the distribution to the holders of adjudicated claims through the depositary. Laws N. Y. 1853, pp. 888, 893, 894, c. 463, §§ 6, 15, 17; Laws N. Y. 1875, p. 325, c. 337; In re Guardian Mutual Life Ins. Co., 13 Hun (N. Y.) 115; People ex rel. Ruggles v. Chapman, 64 N. Y. 557, 560; Ruggles v. Chapman, 59 N. Y. 163; In re Home Provident Safety Fund Ass'n, 129 N. Y. 288, 29 N. E. 323; Matter of Attorney General v. North American Life Ins. Co., 92 N. Y. 654; Smyth v. Munroe, 84 N. Y. 354, 362. Is the jurisdiction of the federal court sitting in equity to enforce this trust and to liquidate the affairs of these insolvent corporations thus limited by the statutes of the state of Missouri? Cestuis que trust, qualified citizens of another state, exhibited their bill in this court to foreclose a pledge and to enforce a trust for their benefit. Many other bondholders similarly situated have intervened and prayed the same relief. The answers of all the defendants have been filed, and they admit that the complainants are ultimately entitled to the relief they pray. The remaining question is one of method of administration; not of right to recover. A federal court sitting in equity has the plenary jurisdiction of the English Court of Chancery, and one of the inherent powers of each court is to take and to hold by its own hands, by its receivers, the control and the possession of mortgaged, pledged, and trust property during the pendency of suits concerning it in those courts whenever in the exercise of a wise judicial discretion these courts are of the opinion that the most speedy and perfect administration of justice and the rights of the parties interested in the property will be best secured by such action. The statutes of the state of Missouri do not by their terms, and the Legislature of that state never, intended that they should in any way limit or impair this power of the federal courts. Moreover, the power of the Circuit Courts of the United States to adjudicate claims and administer remedies in equity is vested in them as a part of the judicial power of the nation by the Constitution of the United States and the judiciary act of 1789, and, as it was not granted by, it may not be revoked, impaired, or limited by, the act of any state. Wherever citizens of different states lawfully invoke the jurisdiction of the federal courts to determine controversies between them which involve the requisite amounts, they have the constitutional right to the conduct of that litigation by the methods, to the administration of the remedies, and to the determination of those controversies by the independent judgments of those courts; and no state, by conferring exclusive jurisdiction of such issues upon its own courts, by prescribing

exclusive methods of commencing or of conducting litigation, by prohibiting the seizure of the subject of the litigation during its pendency, or by any other means, may lawfully strike down that right or take away the plenary power of the national courts to conduct the litigation, to administer their remedies, and, in the exercise of their judicial discretion, to control the possession of its subject-matter during its pendency in accordance with their established rules of practice, and finally to adjudicate the claims of the parties and to enforce their judgments. Act Aug. 13, 1888, c. 866, § 1, 25 Stat. 433, 434 [U. S. Comp. St. 1901, p. 508]; Davis v. Gray, 16 Wall. 203, 221, 21 L. Ed. 447; Ex parte McNeil, 13 Wall. 236, 20 L. Ed. 624; Cowley v. Railroad Co., 159 U. S. 569, 583, 16 Sup. Ct. 127, 40 L. Ed. 263; Cummings v. Bank, 101 U. S. 153, 157, 25 L. Ed. 903; Gaines v. Fuentes, 92 U. S. 10, 20, 23 L. Ed. 524; Railway Co. v. Whitton, 13 Wall. 270, 278, 287, 20 L. Ed. 571; Broderick's Will, 21 Wall. 503, 520, 22 L. Ed. 599; Gormley v. Clark, 134 U. S. 338, 348, 10 Sup. Ct. 554, 33 L. Ed. 909; Darragh v. H. Wetter Mfg. Co., 78 Fed. 7, 14, 23 C. C. A. 609, 616; Richardson v. Green, 9 C. C. A. 565, 571, 578, 61 Fed. 423, 429, 435; National Surety Co. v. State Bank, 120 Fed. 593, 56 C. C. A. 657, 61 L. R. A. 394; Sawyer v. White, 122 Fed. 223, 227, 58 C. C. A. 587, 591.

The city charter of Duluth provided that no claim against that city should be paid unless it was presented to the city council and allowed; that the city attorney upon the request of seven taxpayers should appeal to the district court of the state of Minnesota from the allowance of every claim exceeding $25, except the claims of employés or officers for wages or salaries; and that after such appeal no such claims should be paid by the officers of the city until a certified copy of the judgment of the state court was filed with the city clerk. A citizen of another state whose claim for $25,500 had been allowed and appealed to the district court of the state brought a suit against the city in the federal court in Minnesota to enforce its claim, and the Court of Appeals of this circuit said (Barber Asphalt Paving Co. v. Morris, 132 Fed. 945, 949, 66 C. C. A. 55, 61, 67 L. R. A. 761):

"The provision of the city charter that, after the claims of the petitioner were challenged by appeals to the state court, they should never be paid by officers of the city without the order of that court, was ineffective to deprive the court below of the power in a proper case before it to order those claims to be paid, or to relieve the officers of the city from the duty to obey such an order. Mercer County v. Cowles, 7 Wall. 118, 119, 19 L. Ed. 87; Chicot County v. Sherwood, 148 U. S. 529, 533, 534, 13 Sup. Ct. 695, 37 L. Ed. 546; Thompson v. Searcy County, 57 Fed. 1030, 1037, 6 C. C. A. 674, 680; Hess v. Reynolds, 113 U. S. 73, 77, 78, 5 Sup. Ct. 377, 28 L. Ed. 927; Clark v. Bever, 139 U. S. 96, 103, 11 Sup. Ct. 468, 35 L. Ed. 88; Union Bank v. Vaiden, 18 How. 503, 15 L. Ed. 472; Lawrence v. Nelson, 143 U. S. 215, 12 Sup. Ct. 440, 36 L. Ed. 130; Byers v. McAuley, 149 U. S. 608, 13 Sup. Ct. 906, 37 L. Ed. 867; Security Trust Co. v. Black River National Bank, 187 U. S. 211, 227, 23 Sup. Ct. 52, 47 L. Ed. 147; Barrow Steamship Co. v. Kane, 170 U. S. 100, 111, 18 Sup. Ct. 526, 42 L. Ed. 964; In re Stutsman County, N. D. (C. C.) 88 Fed. 337, 340, 343. Thus the laws of the states relative to the administration and settlement of decedents' estates generally expressly limit the right to establish demands against such estates to proceedings in the probate courts of the states; but a creditor of another state may nevertheless establish his claim in an action against the personal representative of the deceased in the proper federal court without first

presenting it to the probate court. Security Trust Co. v. Black River National Bank, 187 U. S. 227, 23 Sup. Ct. 52, 47 L. Ed. 147, and cases there cited. By the law of their organization counties in Illinois were exempt from suit elsewhere than in the circuit courts of the county. But a suit by a citizen of another state against such a county in the federal court was sustained, and Chief Justice Chase said: 'The power to contract with citizens of other states implies liability to suit by citizens of other states, and no statute limitation of suability can defeat a jurisdiction given by the Constitution.' Mercer County v. Cowles, 7 Wall. 122, 19 L. Ed. 87.

"The Legislature of the state of Arkansas provided that no suit or proceeding against a county in that state should be maintained in any court otherwise than by a presentation of a verified claim to the county court for allowance or rejection; that the defeated party might appeal from the decision of that court to the state court of general jurisdiction, where the case should be tried in the usual course; but that in the absence of the presentation of a verified claim to the county court no case against or controversy with a county could arise of which any court, state or federal, could take cognizance or jurisdiction. Citizens of New York brought an action against a county of the state of Arkansas in the federal court by original process without presenting any claim to the county court. The Supreme Court sustained the action, and said: 'Any other view of the subject would prevent citizens of other states from resorting to the federal courts for the enforcement of their claims against counties of the state, and limit them to the special mode of relief prescribed by the act of February 27, 1879 (Sand. & H. St. Ark. 1894, c. 32, §§ 810–812). The jurisdiction of the federal courts is not to be defeated by such state legislation as this. In Hyde v. Stone, 20 How. 170, 175, 15 L. Ed. 874, it is said: "But this court has repeatedly decided that the jurisdiction of the courts of the United States over controversies between citizens of different states cannot be impaired by the laws of the states which prescribe the modes of redress in their courts, or which regulate the distribution of their judicial power. In many cases state laws form a rule of decision for the courts of the United States, and the forms of proceeding in these courts have been assimilated to those of the states, either by legislative enactment or by their own rules. But the courts of the United States are bound to proceed to judgment, and to afford redress to suitors before them in every case to which their jurisdiction extends. They cannot abdicate their authority or duty in any case in favor of another jurisdiction. Suydam v. Broadnax, 14 Pet. 67, 10 L. Ed 357; Union Bank v. Vaiden, 18 How. 503. 15 L. Ed. 472. 'This principle has been steadily adhered to by this court.' Chicot County v. Sherwood, 148 U. S. 529, 533. 534, 13 Sup. Ct. 695, 37 L. Ed. 546."

The expression of the Supreme Court last quoted warns that this court may not renounce a jurisdiction lawfully invoked, nor abdicate in favor of another jurisdiction any authority granted or duty imposed upon it. The courts of New York whose decisions have been cited did not consider or determine the limits of the jurisdiction of the federal courts in cases of this nature, and, if they had done so, their opinions upon that question could not prevail over those of the Supreme Court. The uniform and repeated decisions of that court to which reference has been made leave no doubt that the power of the federal court sitting in equity is plenary to take from the State Treasurer, and to hold the possession of the pledged securities by its own receiver during the pendency of this suit in accordance with the customary practice of the national chancery courts in similar cases. Miles v. New South Building & Loan Ass'n (C. C.) 95 Fed. 919, 921; Memphis Sav. Bank v. Houchens, 115 Fed. 96, 107, 52 C. C. A. 176, 187; Brun v. Mann (C. C. A., 8th Circuit, November 7, 1906) 151 Fed. 145.

There is another reason for this conclusion. The fourth section of the act of 1893 authorizes a circuit court of the state of Missouri in

a suit by the bondholders of an insolvent bond investment company to appoint a receiver to liquidate its affairs, and to use for that purpose, upon the order of the court, the deposit previously made by the company with the State Treasurer to secure the bondholders. This statute places no limit of time within, or of conditions under which this authority may be exercised, so that it is a grant of unlimited power to the court to use this deposit by means of its receiver of the corporation "to wind up its affairs, liquidate its debts, and distribute its assets" when and as in the exercise of its judicial discretion it may deem its use most conducive to a just administration of the estate, and hence to take it into the possession of its receiver immediately upon his appointment if in its opinion this course of action would best serve the interests of the parties to the suit. But "a party by going into a national court does not lose any right or appropriate remedy of which he might have availed himself in the state courts of the same locality." Davis v. Gray, 16 Wall. 203, 221, 21 L. Ed. 447. Rights created and remedies provided by the statutes of the state may be enforced and administered in the national courts either at law, in equity, or in admiralty, as the nature of the rights and remedies may require. National Surety Co. v. State Bank, 120 Fed. 593, 603, 56 C. C. A. 657, 667, 61 L. R. A. 394; Darragh v. H. Wetter Mfg. Co., 23 C. C. A. 609, 615, 616, 78 Fed. 7, 14; Cummings v. Bank, 101 U. S. 153, 157, 25 L. Ed. 903; Broderick's Will, 21 Wall. 503, 520, 22 L. Ed. 599; Gormley v. Clark, 134 U. S. 338, 348, 10 Sup. Ct. 554, 33 L. Ed. 909; Cowley v. Railroad Co., 159 U. S. 569, 582, 16 Sup. Ct. 127, 40 L. Ed. 263. As the state of Missouri has granted to its courts the power to take from the State Treasurer these deposits, and to transfer them to their receivers during the pendency of suits of this nature, the federal courts have, and may lawfully exercise, the same authority.

The deposits are secure from spoliation and destruction in the hands of the State Treasurer. Is it a reasonable exercise of judicial discretion to take them from his possession and transfer them to the possession of this court at this time, for the possession of the receiver is the possession of the court? This property is not now and probably will not be needed for distribution among the creditors and bondholders for many days. But the bondholders are in equity the owners of the property. They have the right to resort to it to obtain an adjudication of, and to satisfy, their claims, and a vast majority of them who have been represented in this court have prayed it to immediately take possession and administration of these securities. Neither the State Treasurer nor any other officer of the state has any pecuniary interest in this property or in its disposition. It is a salutary general rule, which courts may well follow in the absence of controlling legal objections, that the beneficial owners of property rather than those who have no interest in it should be permitted to select their agents for, and to control and direct, its administration. The law of the land and the exhibition of the bill of the complainants have imposed upon this court the duty of winding up the affairs, liquidating the debts, and distributing the assets of the defendant corporations, a duty which it may not lawfully renounce or abdicate. In the discharge of this duty, it must collect and convert into money the securities now in the hands of the State Treas-

urer, which consist in large part of promissory notes secured by mortgages upon real estate. It can discharge this duty only by its agents or officers acting under its orders, and, as it is in a broad general sense responsible for this administration, the privilege must be accorded it to select its own agents for this purpose, to intrust the discharge of this duty to its own officers, who owe no divided allegiance and who will be subject to its orders, and to removal at its will.

The interest upon the notes and mortgages in the hands of the Treasurer is falling due and the notes are maturing. In so large an amount of securities there must be some which must be collected by suit, some which should be compromised, and some which should be sold. The Treasurer is without power to compromise or to sell while the receiver by order of the court may take such, or any action which the court deems to be for the best interest of the beneficial owners of the securities.

The bondholders who claim shares of the proceeds of these securities are thousands in number. Their claims must be prepared and presented to the special master or to the court before they can be adjudicated, and before any distribution can be made. Notices and forms of proofs of claims must be sent to them, and the conflicting claims of various classes of bondholders, as well as the individual claims, must be heard and decided. Thousands of dollars must necessarily be expended in the mere clerical work of recording the individual claims of these bondholders, classifying them, mailing to them the requisite notices and forms of proofs of claims, and paying the postage thereon. This court is empowered to use the deposits with the State Treasurer to wind up the affairs of these corporations. These affairs cannot be wound up until these notices are given, these proofs sent forth and returned, these claims recorded and adjudged. The receiver has not sufficient money to pay the expenses of preparing and mailing to the bondholders the necessary notices and forms of proofs of claims to enable the numerous bondholders to fairly present their claims to the master and the court for adjudication, and the administration of this property stops, awaiting the possession of these deposits by the receiver, to the end that the necessary part of them may be used for the purpose of liquidating the affairs of the insolvent corporations. This pressing necessity, the need of collecting the notes and bonds, or of otherwise converting them into money, the right and the uniform and salutary practice of the courts of the United States to administer the affairs of insolvent corporations for the benefit of those entitled to the proceeds of their property by means of officers of their own selection subject to their own orders only, and the prayer of the vast majority of the real owners of this property who have been represented in the court that it do so convince that it is a reasonable and just exercise of its judicial discretion to cause these securities to be immediately transferred and delivered to its receiver, and thus to reduce them to its possession and control.

This suit was commenced on June 1, 1906. The receiver herein was appointed on June 26, 1906, and it qualified on July 5, 1906. On April 30, 1906, Eugene W. Lewis, a holder of bonds of the North American Investment Company, commenced a suit in one of the courts of the state

of Missouri against that company, the American Reserve Bond Company, and the Treasurer of the state of Missouri to secure the payment of his bonds. He alleged in his petition that the North American Investment Company owed him upon certain bonds it had issued about $5,000, and that it had deposited with the State treasurer, to secure the payment of these and other bonds it had emitted, $500,000 in cash and bonds, and he prayed for a decree "subjecting the said trust fund of $500,000 now on deposit with the State Treasurer in the city of Jefferson City, Mo., or so much thereof as may be necessary to the payment of the plaintiff's demand"; that the State Treasurer be ordered to pay over the amount necessary for his purpose; that he recover his costs and have general relief. The petition contained no prayer for the appointment of a receiver, and no action has been taken by the state court in that suit to acquire possession of the property or any part of it. Did the commencement of the Lewis suit before the Morrill suit in this court was begun place the deposit with the State Treasurer or any part of it in the custody of the state court so that this court may not lawfully reduce it to the possession of its receiver and administer it? Conceding, without deciding, the utmost that Lewis can claim, that the state court first secured jurisdiction of the subject-matter and of the parties to the suit brought by him and that the effect of that suit was to fasten an equitable lien upon a sufficient portion of the securities to the amount of $500,000 deposited by the North American Investment Company to pay his demand, propositions at least doubtful, it is difficult to perceive how that suit placed these securities or any part of them in the custody of the state court or beyond the reach of the receiver of this court. It goes without saying that the court which first secures jurisdiction of the parties and of the subject-matter and the actual possession of the res may retain the latter to the end of the litigation in that court against the demand of any court of co-ordinate jurisdiction. It may also be conceded to be true; for the purposes of the determination of this question in this case that:

"Where a bill in equity brings under the direct control of the court all the property and estate of the defendants, or of certain named defendants, or certain designated property of all or of either of the defendants, to be administered for the benefit of all entitled to share in the fruits of the litigation, and the possession and control of the property are necessary to the exercise of the jurisdiction of the court, the filing of the bill and service of process is an, equitable levy on the property, and pending the proceedings such property may properly be held in gremio legis. The actual seizure of the property is not necessary to produce this effect, where the possession of the property is necessary to the granting of the relief sought." Illinois Steel Co. v. Putnam, 68 Fed. 515, 517, 15 C. C. A. 556, 558.

But the Lewis Case falls under neither of these rules. The state court has never taken actual possession in that suit of the securities deposited with the State Treasurer, and Lewis has not asked it to do so, and did not pray for the appointment of a receiver. The purpose of his suit was not to bring under the control of the court any of these securities "to be administered for the benefit of all entitled to share in the fruits of the litigation," nor was that its legal effect, while these are the purpose and the effect of the instant suit in this court. Again, the possession of the deposits with the State Treasurer is not necessary

and never can be requisite to enable the state court to grant the relief which Lewis seeks. If by the commencement of his suit he has secured a lien upon this deposit of $500,000 or upon any part of it for the payment of his claim of less than $6,000, and this shall be the ultimate judgment of the court of the state, a result which seems improbable, nay impossible, in view of the averment in his petition and the evident fact that these securities were deposited for the equal benefit of himself and all other bondholders of the North American Company similarly situated, that lien will follow the deposit, and will be respected as religiously and paid as promptly and cheerfully by the receiver of this court as it would be by the Treasurer of the state if the deposit remained in his hands. For these reasons, the suit by Lewis to subject these securities of the value of $500,000 to the payment of his individual claim, to the exclusion of all other bondholders similarly situated, did not place this deposit or any part of it in the custody of the state court or beyond the lawful jurisdiction and power of this court to take actual possession of it in a suit like that at bar to wind up the affairs, liquidate the debts, and distribute the assets of the debtor corporation to those who in law and equity are entitled to receive them. Shields v. Coleman, 157 U. S. 168, 170, 177, 15 Sup. Ct. 570, 39 L. Ed. 660; Compton v. Jesup, 15 C. C. A. 397, 398, 68 Fed. 263, 264.

Moreover, on May 3, 1906, the state court in which the Lewis suit was instituted appointed the present receiver in this suit its receiver of the very deposit of $500,000 in question in the Lewis suit, in the suit of Sewell, and others against the American Reserve Bond Company. That suit was subsequently removed to the United States Circuit Court for the Eastern District of Missouri, where it is still pending. If the Lewis suit brought any part of that deposit into the custody of the circuit court of the city of St. Louis, that court deputed its custody to its receiver in the Sewell Case, and with the removal of that suit it passed to the federal court of the Eastern District of Missouri, in which the same receiver continues to act in the Sewell suit. On the 2d day of February, 1906, F. M. Wilcox and others commenced a suit in the United States Circuit Court for the Eastern Division of the Eastern Judicial District of the State of Missouri against the North American Investment Company and the American Reserve Bond Company for the benefit of themselves and others similarly situated to impress a lien or trust upon the assets of the defendants for the benefit of complainants and other parties similarly situated who were bondholders and for the appointment of a receiver. On the 2d day of May, 1906, William Sewell and another brought a suit against the American Reserve Bond Company in the circuit court of the city of St. Louis for the appointment of a receiver and the liquidation of the affairs of the defendant. On the 3d day of May, 1906, the state court appointed the Mississippi Valley Trust Company, the receiver in this suit, a receiver in that suit. On the same day the state of Missouri, on the relation of the supervisor of building and loan associations, filed its intervening petition in that suit. On May 5, 1906, on the petition of the American Reserve Bond Company, that suit was removed to the United States Circuit Court for the Eastern District of Missouri. On May 26, 1906, a motion was made on behalf of the state to remand that suit to the state court, and that motion was denied. On

the same day the Wilcox Case and the Sewell Case were consolidated by order of the court, and the Mississippi Valley Trust Company was appointed receiver in the consolidated cause. On June 26, 1906, the complainants Morrill and others in the suit before us filed a similar bill in the United States Circuit Court for the Eastern Division of the Eastern District of Missouri, the Wilcox and Sewell Cases were consolidated with the suit thus commenced, and the Mississippi Valley Trust Company was appointed receiver in the consolidated cause. There is nothing in these proceedings in the Eastern district of Missouri to deter this court in the Western district of that state from reducing to the possession of its receiver in that court the deposits at Jefferson City within that district. The state, on the relation of the supervisor, was not an original party to the Sewell Suit, but an intervener, and it has no standing to remand that suit to the state court. The Circuit Court of the Eastern District and its receiver are without power to take possession of, or administer, the assets of the defendant companies in the Western District of Missouri. Hale v. Allinson, 188 U. S. 56, 64, 23 Sup. Ct. 244, 47 L. Ed. 380; Fowler v. Osgood, 72 C. C. A. 276, 141 Fed. 20.

The answers to the questions presented by the Attorney General and his associates and the reasons for the answers have now been given. It was desirable and proper that the jurisdiction and duty of this court to immediately take possession of and administer the securities deposited with the State Treasurer should be determined in limine. The questions propounded by the Attorney General and his associates were timely. Their arguments and authorities and those presented by counsel for other parties in this suit were instructive. They have been deliberately, studiously considered. The conclusion of the whole matter is that the legislation of the state of Missouri has not given to the officers of that state any mandatory instruction, and has not imposed upon either of them any duty, to longer withhold from the receiver in this suit the property deposited with the State Treasurer by the defendant corporations to secure the claims of their bondholders, and that the state legislation has not given any mandatory instruction to, or imposed any duty upon, the Attorney General, upon the supervisor of building and loan associations or upon any other officer of the state of Missouri, to institute, conduct, or control any proceeding for the liquidation of the affairs of these defendant corporations in view of the pendency of the suits of their bondholders for that purpose. But this court invokes the advice, suggestions, and assistance of the Attorney General and the other officers of the state in the conduct of this proceeding and in the administration of this property, to the end that a distribution of its proceeds among the creditors and bondholders of these insolvent corporations to whom it belongs may not be unnecessarily delayed.

To that end the motion of the receiver for the transfer and delivery of this property to it must now be granted.