The State *ex rel.* Stevenson *et al.* v. Stephens, *State Treasurer.*

Division One, December 23, 1896.

1. Mandamus: STATE TREASURER: BOND INVESTMENT COMPANIES: SECURITIES: AGREEMENT.   Where, under the act of the legislature of April 21, 1893 (Laws, p. 121), requiring bond investment companies to deposit with the state treasurer in cash or securities approved by him, $100,000 for the protection of investors, within thirty days, or on failure forfeit their charter, the treasurer received from such company $10,000 in cash and a note for $100,000 secured by a deed of trust on land on which there was an incumbrance of $10,000, and agreed to apply the $10,000 so received in cash to the discharge of said incumbrance as soon as the holder of it would accept payment, *mandamus* will lie, on his refusal, to compel the treasurer to apply the $10,000 in accordance with the agreement.

2. ———: ———: ———: ———: ———.   The evidence examined and *held* to show that the $10,000 in cash was received by the state treasurer under an agreement to apply it to the discharge of the incumbrance.

3. ———: ———: ———: ———.   The treasurer was authorized under the act of April 21, 1893, to agree to apply the $10,000 received by him in cash to the extinguishment of the incumbrance so soon as its holders would accept payment.

4. Supreme Court Practice: QUESTION OF FACT.   Where, in an original proceeding in the supreme court, the case is submitted on the record made in another action, the supreme court will adopt the conclusion of fact of the trial judge as in case of an ordinary appeal.

5. Constitution : STATUTE: MONEY BELONGING TO STATE: APPROPRIA-
TION BY LAW: BOND INVESTMENT COMPANIES.  Money deposited by
bond investment companies with the state treasurer under the act of
the legislature of April 21, 1895, for the protection of investors, is not
money belonging to the state within the meaning of the constitution
(art. 10, secs. 15 and 19), and Revised Statutes, 1889, section 8662,
requiring money to be paid out of the treasury only pursuant to ap-
propriation by law.

*Mandamus.*

PEREMPTORY WRIT AWARDED.

. *Lyne S. Metcalfe, Jr.*, and *C. H. Krum* for relators.

(1)  *Mandamus* will lie to compel the performance
of ministerial duties.   Such duties need not be specifi-
cally stated in the law.   It is sufficient if they are im-
posed by implication from a fair and reasonable con-
struction of the law.   *People v. Green*, 64 N. Y. 499;
Merrell on Mandamus, sec. 13.   (2)  There is no legal
reason for the treasurer to retain money which does
not belong to him, and which was paid to him in order
to put the securities offered in the condition contem-
plated by the law.   (3)   The fund in the hands of the
respondent having undoubtedly earned interest since
respondent deposited it in the Central National Bank
of Boonville, he should be required to pay the fund
with its accretions in interest so earned in discharge of
the mortgage.

*R. F. Walker*, attorney general, for respondent.

(1)  Respondent was only authorized under the
act approved April 21, 1893, to receive cash or securi-
ties in the sum of $100,000, from the bond investment
companies doing business in this state; any act, there-
fore, in excess of this authority, such as the receiving

of money to discharge mortgages on real estate taken
as security by the state treasurer was not an official act,
and hence he should not be proceeded against as state
treasurer. Section 1, Laws, 1893, p. 121. (2) This
proceeding is instituted against respondent as state
treasurer; it must, therefore, be to require him to pay
over funds which he holds in an official capacity, and
unless it has been clearly shown that he so holds them,
this writ should be denied. (3) It is expressly pro-
vided by the constitution that no money shall ever be
paid out of the state treasury or any of the funds un-
der its management except in conformity with an
appropriation made by law; such appropriation must
specify the sum appropriated and the object to which
it is to be applied. Sec. 19, art. 10, Con. Mo.; sec. 15,
art. 10, Con. Mo.; sec. 8662, R. S. 1889. (4) A stat-
utory officer is confined to the limitations of the author-
ity conferred on him. *State v. Bank*, 45 Mo. 539;
*State ex rel. v. Aud.*, 52 Mo. 578. (5) If a purely
statutory authority is not pursued strictly, the proceed-
ings thereunder will be void. Throop on Officers, sec.
556, and cases in note 2; Bish., Writ. L., sec. 119.
(6) The court will not presume that the respondent
acted without legal authority unless the facts clearly
support such a presumption, because the administra-
tion of public affairs is best subserved by presuming,
wherever there is evidence to support the presumption,
that an official acted in conformity with the law. There
is ample evidence to support the presumption that the
respondent received the $10,000 in controversy as a
part of the deposit required of the bond investment
company; if he did so receive it, then, as before shown,
it can not be withdrawn except in the manner provided
by the constitution, and the writ should be denied. If
he did not so receive it, then his act was simply that of
an individual, and he so holds the funds in contro-

versy, there is no warrant for this proceeding, and the writ should likewise be denied.

MACFARLANE, J.—The Guarantee Investment Company of Nevada is a corporation organized under the laws of the state as a bond investment company, and prior to July 19, 1893, was engaged in selling bonds and debentures on the partial payment or installment plan.

By an act of the general assembly of the state, approved April 21, 1893 (Acts of 1893, page 121.), such companies were required to "deposit with the state treasurer, in cash ·or securities approved by the state treasurer, the sum of $100,000, for the protection of the investors in such bonds, certificates or debentures." A failure on the part of such corporations to make the required deposit within thirty days after taking effect of the act created a forfeiture of the charter of the corporation.

Respondent Stephens was treasurer of the state, and on the nineteenth day of July, 1893, said corporation deposited with him, in compliance with said act, a negotiable promissory note for the sum of $100,000 signed by D. P. Slattery, J. B. Johnson, and relator William H. Stevenson, which was secured by a deed of trust upon several tracts of real estate and also the sum of $10,000 in cash. This is an original proceeding by *mandamus* to require respondent, as treasurer, to apply the cash deposit to the payment of a mortgage on one of the tracts of land which secured the payment of said note.

The writ charges that respondent agreed to accept, as a compliance with the law, a note of the three parties above named for $100,000, provided it was secured by a mortgage on unincumbered real estate of the value of $200,000; that the real estate offered by said corpo-

ration as security, for said note, was accepted by respondent as sufficient in value, but one tract thereof, which belonged to relator, was incumbered by a mortgage securing a note of relator for $10,000; that in order to make the security good relator deposited the said sum of $10,000 in cash with the express agreement that the same should be applied to the payment of relator's note and the discharge of said prior incumbrance. It is further charged that the owner and holder of the said note of relator is ready and willing to accept payment thereof and to discharge and release said prior mortgage, and relator has requested respondent to apply the said cash deposit in satisfaction thereof, which he refuses to do:

Respondent by return denies that said money was received under an agreement to apply the same as charged, but avers that the same was received as a part of the deposit required by law to be made by said investment company.

Upon the issues thus made the cause was submitted to the court upon the record of a suit of Stevenson against Stephens tried in the circuit court of the city of St. Louis, in which plaintiff (relator herein) sued Stephens (respondent herein) to recover the same sum of money. In that record all the evidence, bearing upon the question here in issue, was preserved.

I. There was much conflict in the evidence in respect to the agreement under which the money in question was placed in the hands of respondent. The evidence of relator is to the effect that the money was deposited under a positive agreement that it should be applied to the satisfaction of the prior mortgage on relator's land, as soon as the mortgagee would accept the payment, while the evidence of respondent tended to prove that the cash deposit was made without condi-

tion as a part of the deposit required by the act of April 21, 1893.

While the evidence is conflicting on this question it is substantially agreed that the deposit was intended to make good the $100,000 note tendered as security. The note and mortgage were deemed ample security but for the prior incumbrance of $10,000 on one of the tracts of land included therein. The requirement of Mr. Williams and Mr. Orear, the attorney and chief clerk of the treasurer, by whom the business was transacted, was positive that only unincumbered real estate would be taken as security. So whatever view may be taken of the agreement there can be no doubt that the cash deposit was taken and is held by respondent in his official capacity of treasurer of the state.

The statute requiring the deposit to be made makes no provision for returning the money or securities to the corporation after the purposes for which it was deposited have been accomplished. It was only intended by the act that the deposit should be retained while the corporation continues to do business, and while its obligations are outstanding. After the corporation has ceased to do business and has discharged all its obligations it is entitled to have returned to it the money or securities deposited, and it is the duty of the treasurer to return them. This would be a mere ministerial duty of the treasurer, which could be enforced by *mandamus*, unless the proceeding is controlled by some provision of law.

The same may be said in respect to the $10,000 cash deposit. It was received and is held by the treasurer officially and, if intended to be used in the discharge of the mortgage, *mandamus* is the proper remedy to enforce the ministerial duty.

II. As before stated there is some conflict in the evidence upon the question of the agreement under

which this cash deposit was made. The transaction was conducted by the chief clerk of the treasurer under the advice of counsel. They both testify that the security offered by the corporation was sufficient and satisfactory except as to one tract of land which was mortgaged to secure an unmatured note for $10,000; that they agreed to accept in cash the amount of the note to make the security good, but that they were unwilling to complicate the matter or bind the treasurer by any positive conditions or promises to be performed by him, in the future, in respect to the application of the money.

There is no doubt, we think, that relator deposited the money with the expectation and belief that it would be applied to the payment of his mortgage whenever the holder of the note should be willing to receive payment.

This transaction took place on the twenty-first of July, 1893. On the twenty-fourth of the same month relator wrote the treasurer that the holder of the mortgage note was willing to accept payment and said: "It was thought by Mr. Orear and Mr. Williams desirable that the incumbrance should be paid instead of your continuing to hold the certificate of deposit." He then requested that the certificate be returned so that the money could be used in payment of the note.

In reply to that letter the treasurer, under date of July 25, 1893, wrote: "In reply to your letter of the twenty-fourth inst. I have to say just as soon as we receive the abstract of title from Judge Harrison, and have examined them, or had our Mr. Williams do so, I will send the certificate of deposit to St. Louis to be delivered to you; the money to be applied as you mention."

From these letters, written so near the date of the transaction, and considering all the other circumstances, our conclusion is that the money was deposited

and accepted under an understanding that it should be applied in payment of the note provided that such arrangement was ratified and approved by the treasurer; if not it should stand as a part of the deposit. The letter of the treasurer is sufficient proof of ratification.

This case was submitted upon the record in another case in which the court stated this conclusion of fact: "The conclusion that I have reached from the evidence is, that the $10,000 in question was put in the hands of the treasurer of the state for the one purpose of satisfying the deed of trust for that sum then existing, and that it can not lawfully be used for any other purpose." We reach the same result; but, if we did not, as the issues in this case are submitted upon the record in that one, not the evidence alone, we would feel bound by the finding of fact by the trial judge. It has often been held that a finding of fact by a jury or a trial judge, in a case at law, will not, on appeal, be disturbed by the appellate court. The same reason for adopting the conclusion of fact of the trial judge exists when the case is submitted upon the record of another trial, as upon appeal.

As respondent only wishes to know his duty, in order to perform it, no particular stress is laid upon the question of fact, for it is immaterial to him, as affecting the value of the security, whether the money is used in payment of the mortgage on the real estate or is retained as a part of the security. Indeed it is important, in case of an attempted foreclosure of the mortgage, that the money should be applied to its payment; otherwise the security would be much impaired.

III.    It is claimed by respondent that it was not in the power of the treasurer, under the law, to make

such an agreement, and it was, therefore, illegal and void.

It is true the statute gives to the treasurer, in express terms, no authority to receive money for the purposes contemplated by the agreement, but he is authorized and required to receive "in cash or securities * * * the sum of one hundred thousand dollars, for the protection of the investors in such bonds, certificates or debentures" of such investment companies.    He is given a very broad discretion as to the character of the securities.    He is required to approve the securities and this duty implies that he will exercise his best judgment and discretion to see that they are amply sufficient for the purposes contemplated by the law, but, at the same time, he should not be arbitrary and unreasonable in his demands.

This mortgage was tendered on the afternoon of the last day for depositing the securities, and, unless accepted, there would have been a failure to comply with the law, and a forfeiture of the charter of the company.    The security offered was satisfactory except for the $10,000 mortgage on one tract of land.    This land belonged to relator Stevenson, and he offered to place in the hands of respondent $10,000 in cash, with which to pay off the mortgage or to protect and make good the security.

If the security had been accepted, with the incumbered land, no one can doubt the authority and duty of the treasurer afterward to accept cash to be used in discharging the incumbrance, in case of an attempt to foreclose the mortgage.    The law necessarily implies not only that the treasurer should take ample security, but also that he should use every means at hand to keep it good.    The treasurer stands, in respect to the creditors of the corporation, in the nature of a trustee,

and has the implied power to so manage the trust fund as to give protection to those secured. He was undoubtedly right in his determination to take nothing as security which was not entirely free from claims or liens of all other persons, as he would have no funds in hand which could be applied to their protection; or, if incumbered security was accepted, it was his undoubted duty to require means to be provided for protecting the property and preventing a sale, and power to do so is necessarily implied. We agree to what was said by Judge VALLIANT in the case of *Stevenson v. Stephens*, which was a controversy over the same subject-matter: "The statute made it his duty to see that the securities were good, and if a security offered had a weak point he had authority, and it was his duty, to have that weak point guarded, and this he did. I see no reason to question the validity of his act from a legal standpoint, or its good judgment from a business standpoint, or its good faith from any standpoint."

IV. It is next insisted that though respondent may hold the money as treasurer, and for the purpose of making the security good, still he can only be required to pay it out in the manner and under the restrictions of the constitution and laws of the state.

Section 15, article 10, of the constitution requires that, "all moneys now, or at any time hereafter, in the state treasury belonging to the state shall, immediately on receipt thereof, be deposited by the treasurer to the credit of the state for the benefit of the funds to which they respectively belong" * * *, and "shall be disbursed by said treasurer for the purposes of the state, according to law, upon warrants drawn by the state auditor, and not otherwise." Section 19 of the same article provides that, "no moneys shall ever be paid out of the treasury of this state, or any of the funds under its management, except in pursuance of an

appropriation by law." The statute contains like pro-
visions. R. S. 1889, sec. 8662.

It is manifest that these provisions only apply to
money "belonging to the state." The money in ques-
tion, though it was deposited with the treasurer, was
for the specific purpose of making good the security
intended for the protection of those dealing with bond
investment companies, and was not money belonging
to the state within the meaning of the constitution.
The securities, whether in money, bonds, or notes, are
held by the treasurer in trust, not for the use or benefit
of the state, but for the protection of those who may
hold the bonds, certificates or debentures of bond in-
vestment companies which are authorized to sell such
securities on the partial payment or installment plan.

Section 4 of the act of April 21, 1893, provides for
winding up the affairs of such corporations, and liqui-
dating their debts and distributing their assets in case
of a failure to comply with the requirements of the act.
This is required to be done by a receiver appointed by
the court. No legislative appropriation is made neces-
sary. It is clear that the legislature did not intend
that the money or securities deposited should be paid
out or returned under the regulation required in paying
out the public money. We are of the opinion, there-
fore, that respondent had the implied power, under the
act, to make the agreement and that an appropriation
or warrant of the auditor was not necessary.

We appreciate the delicate situation of the treas-
urer, in the circumstances, and deem it a proper act of
prudence on his part to protect himself by an order of
court. He doubtless recognized that the securities
could be better protected by paying off the incum-
brance, but in doing so he did not wish to hazard the
validity of the other security.

Our conclusion is that respondent, as treasurer, apply the said sum of $10,000 and all interest earned since July 19, 1893, thereon, to the payment of said incumbrance on relator's land. A peremptory writ of *mandamus* to that effect is awarded. All concur, except ROBINSON, J., who is absent.