# STATE OF NORTH DAKOTA EX REL. GUNDER OLSON as State Treasurer v. CARL O. JORGENSON as State Auditor.

(150 N. W. 565.)

**State auditor — state treasurer — charges and credits — warrants — hail insurance commissioner — taxation — not state fund — function of state government.**

1. Chap. 23, Laws of 1911, provided for the establishment of a hail insurance department, to be conducted by the commissioner of agriculture and labor, who was to be known as the commissioner of hail insurance. The funds received from premiums were known as the hail insurance fund, and were placed in the hands of the state treasurer. Such law provided for the hail insurance commissioner drawing warrants for the payment of losses, on the state treasury. The general law regarding the duties of state treasurer and auditor require the auditor to charge the treasurer with funds received by the latter, and to credit him with vouchers exhibited to the auditor. During the months of January, February, and March, 1913, the treasurer paid about $3,800 out of the hail insurance fund on warrants issued by the commissioner of hail insurance, in accordance with the terms of the law referred to. The funds received had been charged to the treasurer by the auditor, on the assumption that the provisions of the general law applied. When the warrants drawn by the commissioner of hail insurance were presented to the auditor for the above sum, he refused to credit them to the treasurer, taking the position that he was the only constitutional officer having the power to draw warrants on the treasurer, that, these having been drawn by the hail insurance commissioner, they were illegal and invalid. It is *held:*

(a) That on the assumption that the general law, requiring the auditor to charge and credit the treasurer with receipts and disbursements, is applicable to this fund, he is not relieved from making such credits of warrants drawn by the hail insurance commissioner, because this fund is not a state fund, as it is not derived from taxation or any of the other sources which constitute it a fund of the state, and is not used in carrying on any function of government.

(b) That, assuming that the auditor only can draw warrants on state funds in the hands of the treasurer, that duty may be placed upon any other suitable person or official as to any fund in the hands of the treasurer, which is not a state fund.

(c) That the treasurer is the custodian of the hail insurance fund for those who contributed it.

**State auditor — hail insurance fund — duty of keeping account — charges and credits.**

2. The state auditor, if under the law authorized to keep any record of the hail insurance fund, which is not determined, does so by virtue of holding the office of auditor for the time being, and not because the individual happening to hold that position is any specified person; and the appellant, having accepted the burden, and assumed to act by reason of his incumbency of the office of auditor, and having made the charges against the treasurer, cannot escape the duty of completing the act by crediting the amount of the vouchers exhibited to him.

**Mandamus — compel the performance of a duty.**

3. If, however, the law in question does not contemplate the auditor keeping the record of this fund, he is not relieved from making the credit when he has assumed to make the charges against the treasurer; and mandamus in either event will lie to compel him to cancel the charges and clear the record of the treasurer.

**Constitutionality of law — state auditor's duties thereunder.**

4. Neither the constitutionality of the hail insurance law as a whole is determined, nor the constitutionality of any provision permitting any official, other than the state auditor, to draw warrants against state funds.


Opinion filed January 2, 1915.


Appeal from the District Court of Burleigh County; *W. L. Nuessle,* J.

Affirmed.

*Barnett & Richardson,* for appellant.

The state auditor is a constitutional officer. An auditor is one who is authorized to examine accounts, compare charges and vouchers, examine parties and witnesses, allow and reject charges, and state a balance. People ex rel. Benedict v. Oneida County, 24 Hun, 413; Cavin v. Brooklyn, 5 N. Y. Supp. 758; People ex rel. Myers v. Barnes, 114 N. Y. 317, 20 N. E. 609, 21 N. E. 739; People ex rel. Cochran v. Pelham Bd. of Auditors, 74 Hun, 83, 26 N. Y. Supp. 122.

It was the clear instruction of the framers of the Constitution and of the laws of the state, that the auditor should have and exercise discretion in the examination and adjustment of claim against the state, with power to reject the same, and the people must answer for his stewardship. Sawyer v. Mayhew, 10 S. D. 18, 71 N. W. 141.

If the legislature has power to authorize the hail insurance commissioner to write his warrants direct on the state treasurer, then it has power to authorize any other state officer to do likewise, and thus eliminate the office of the state auditor from all consideration in the adjustment and payment of claims. State ex rel. Proudfit v. Hastings, 10 Wis. 525; Ex parte Corliss, 16 N. D. 475, 114 N. W. 962.

*Andrew Miller,* Attorney General, and *Alfred Zuger* and *John Carmody,* Assistant Attorneys General, for Respondent.

The state treasurer must keep and state all accounts in which the state is interested. Rev. Codes 1905, § 101, subdivs. 6–9, § 111.

Moneys shall be paid from the state treasury only upon the warrant or order of the auditor. Rev. Codes 1905, § 381.

This is only a statutory provision, and may be amended or repealed at the will of the legislature. But the legislature may and it has provided a different method of disbursement of these funds. Com. v. James, 135 Pa. 481, 19 Atl. 950.

SPALDING, Ch. J. The legislative assembly of 1911, by chapter 23 of its acts, provided for establishing a hail insurance department in this state; that is, it provided a method whereby owners of growing crops might insure them by the means provided through the department, and participate, in case of loss, in a fund designated and known as the hail insurance fund, in the hands of the state treasurer.

This law provided that the state treasurer should pay out of such fund only upon warrant issued and signed by the commissioner of hail insurance, in accordance with the terms of that act. Section 12 required the commissioner of hail insurance to draw his warrants on the state treasurer when he had ascertained the whole year's business, to be paid out of the hail insurance fund, such warrants to be forwarded to the various county treasurers where losses had occurred.

During the months of January, February, and March, 1913, the state treasurer paid about $3,800 out of this fund upon warrants issued by the commissioner of hail insurance, in accordance with the provisions referred to. Such warrants did not go through the hands of the state auditor, but after payment they were presented by the state treasurer to the auditor, and credit demanded therefor. The auditor refused to allow such credit or to receive such warrants, claim-

ing that the law as a whole was invalid, and in any event the provisions of the act referred to were unconstitutional and void in so far as they provided that the hail insurance commissioner, rather than the auditor, draw his warrants upon the state treasurer to pay losses. The auditor had theretofore charged the amount in said fund to the treasurer, claiming to act under the general law in doing so. Nothing is involved in this case except the warrants specifically referred to, as the legislative assembly of 1913 amended the law, and provided that the auditor should draw the warrants covering the losses, instead of the commissioner of hail insurance.

This proceeding was instituted by the state treasurer as relator to compel the auditor to receive the warrants referred to and paid by the state treasurer, and issue to said treasurer his receipt therefor, and to credit him with all sums paid from said fund upon such warrants. The facts are not controverted. In the district court an alternative writ was first issued, and on the return day it was made peremptory, commanding the defendant as state auditor to immediately receive such warrants, etc. From the judgment of the district court an appeal has been taken to this court.

Although it appears that in the district court it was contended by the appellant that the entire act was unconstitutional and void, the record does not disclose the grounds upon which that court granted the writ. In this court appellant only contends that the provisions for the commissioner of agriculture and labor, acting as the commissioner of hail insurance, drawing the warrants to pay losses, are invalid. The ground is that the auditor is a constitutional officer, and the only person who can be authorized by the legislative assembly to audit accounts and draw warrants on the state treasurer for the payment of state funds. In determining this appeal we shall therefore assume, without deciding the question, that the law as a whole is a valid legislative enactment, and proceed to determine whether it was within the power of the legislative assembly to so provide for the drawing of warrants against the hail insurance fund on the state treasurer. We shall assume for the purposes of this case that the state auditor is the only official who may be empowered to draw warrants upon the treasurer for the payment of state funds, or funds belonging to any of the departments of the state, on deposit with the treasurer.

The fund known as the hail insurance fund is composed of moneys which do not belong to the state, and which are not state funds. That fund is not used in carrying on any function of government. It is not raised by taxation, by the payment of fees, is not received from the sale of lands, or for interest on land contracts, or in any other manner which constitutes it a state or public fund, and is not the property of the state. It is derived from premiums paid by owners of crops within the state, which premiums are held by the state treasurer and disbursed, after paying expenses provided for by the act in question, to pay losses from hail, incurred by the persons whose crops have been insured, and no appropriation is necessary to authorize its disbursement. See State ex rel. Stevenson v. Stephens, 136 Mo. 537, 37 S. W. 506. The payments made by crop owners are not obligatory. They need not take this insurance. Their action is voluntary, and when they make payments such payments go into a fund to be disbursed by whomsoever may be at the time the state treasurer, on the order of the person who happens for the time being to be the commissioner of agriculture and labor, and therefore hail insurance commissioner. The treasurer is the custodian of the fund, not a state fund, but a fund belonging to those who contributed it for the purpose named. The commissioner of agriculture and labor is made the commissioner of hail insurance, and is given charge of the bookkeeping and the administrative features necessary to carry out the purposes of the act, and has charge of the apportionment and the disbursement of this fund, after determining to whom it is to be paid, and how much of it is to be paid to each claimant. He acts, not on a fund raised as state funds are provided, but by reason of the legislative assembly having permitted him and attempted to authorize him to act in another and different capacity, when owners of crops voluntarily request him so to do and make the necessary payments. In the same sense the treasurer is the custodian of the fund. The legislature might with equal propriety have made any other state, county, or township officials the custodians and administrative officials of this or corresponding funds, or it might undoubtedly have constituted some other official, and very likely a private individual, the administrative officer of the fund and business. They have selected the state treasurer and the commissioner of agriculture and labor because there are always

incumbents of these offices, and the nature of the duties harmonize with those of the state officials named. That is, the duties are of a similar character. These were undoubtedly among the controlling considerations which induced the legislature to name these officials, rather than other persons who might have been named.

It may aid in considering this to ascertain the definition of an auditor, that is, an auditor as applied to a state official. The powers and duties of a governmental auditor are thus defined: "An officer of government whose function it is to examine, verify, and approve or reject accounts of persons who have had the disbursement of government moneys, or have furnished supplies for government use." 1 Abbott's Law Dict. 111. Bouvier thus defines it: "An officer of the government whose duty it is to examine the accounts of officers who have received and disbursed public moneys by lawful authority." 1 Bouvier's Law Dict. 195. These definitions are approved in State v. Brown, 10 Or. 216. A definition applicable to the state auditor, under our system, may be found in State ex rel. Proudfit v. Hastings, 10 Wis. 525. We quote: "As used in our Constitution it signifies an officer whose business is to examine and certify accounts and claims against the state, and to keep an account between the state and its treasurer." This definition clearly implies that his strictly official duties only relate to matters pertaining to the state government and funds, and that if, as we have assumed, the legislature has no power to designate any other person to draw warrants on state funds, this restriction does not apply to funds which clearly have nothing to do with those derived from taxation or any other public source, and which do not belong to the state as such, and cannot be used for any public purpose. The legislative assembly was therefore under no constitutional compulsion to name the state auditor as the party who should draw the warrants, and the provisions authorizing the commissioner of hail insurance to do so are therefore not in conflict with the provision of the state Constitution providing for the election of such official. The subject is an interesting one, and would be worthy of more extended treatment, were this much more than a moot case, and did our time permit full elaboration of the principles involved. We content ourselves with referring to State ex rel. Stevenson v. Stephens, 136 Mo. 537, 37 S. W. 506, a case directly in point, in which it was

held that money deposited with the state treasurer by investment companies, under an act of the legislature for the protection of investors, is not money belonging to the state. That court said:

"It is manifest that these provisions only apply to money 'belonging to the state.' The money in question, though it was deposited with the treasurer, was for the specific purpose of making good the security intended for the protection of those dealing with bond investment companies, and was not money belonging to the state within the meaning of the Constitution. The securities, whether in money, bonds, or notes, are held by the treasurer in trust, not for the use or benefit of the state, but for the protection of those who may hold the bonds, certificates, or debentures of bond investment companies which are authorized to sell such securities on the partial payment or instalment plan."

But appellant urges that, if we should arrive at the conclusion reached, mandamus will not lie because, perforce of such conclusion, the auditor is not such a state officer as may be the subject of a writ compelling him to act. We think there is no merit in this contention. This fund is placed in the hands of the treasurer, and if we assume, as is assumed by both parties to this appeal, that the provisions of the general law, requiring the state auditor to charge moneys received by the state treasurer to that official, and, on his exhibiting vouchers, credit him for the amounts paid out, are applicable, then on this assumption these acts are done by virtue of these persons being state officers. They are, by virtue of their offices, the custodian and book-keeper of the fund. The persons to perform these duties are not named in the act. They are persons who, for the time being, happen to occupy the official position of treasurer and auditor, and it is by virtue of those positions that they handle this fund, and the auditor, having accepted the burden and assumed to act in accordance with legislative directions, should not be heard to deny that he is acting by reason of his incumbency of the office of auditor, and thereby escape the duty of completing the act which he has already partially performed; that is to say, he has made the charge, and now refuses to make the credit.

There is, however, another consideration to which attention may be called. Chapter 23, supra, nowhere mentions the auditor in connection with the duties pertaining to the hail insurance fund or business.

As we have said, it was assumed that the general law regarding the accounting between the treasurer and the auditor was applicable. We are by no means certain that the legislature intended it to be so, but if it did not,—and we do not determine this question,— no different conclusion could be reached in view of our holding that the funds derived from insurance premiums are not state funds. No method of procedure, except mandamus, occurs to us, by which, when having assumed to do a part of an act assumed to be required of the auditor by law, he can be compelled to complete the record of the transaction. In the Stephens Case, supra, it was held that mandamus was the proper remedy to compel the state treasurer to pay out the funds held by him as custodian or trustee. The judgment of the District Court is affirmed, without costs.