DES MOINES MUTUAL HAIL & CYCLONE INSURANCE AS-
SOCIATION, a Foreign Corporation, Respondent, v. JOHN
STEEN and John Steen as Treasurer of the State of North Da-
kota and the State of North Dakota, Appellants.

(175 N. W. 195.)

**Insurance — interest on moneys deposited with state treasurer by insurance companies — interest becomes a part of the fund.**

As a general rule interest earned on a fund belongs to the owner of the fund. It is *held* that moneys deposited by a foreign mutual hail insurance company under §§ 4896 *et seq.*, Comp. Laws 1913, belongs to the insurance company making the deposit, and that all interest earned on the fund while on deposit with the state treasurer becomes a part of the fund and belongs to the owner thereof.

Opinion filed September 18, 1919.

Appeal from the District Court of Burleigh County, Honorable *W. L. Nuessle,* Judge.

From a judgment in favor of plaintiff, both Steen and the state of North Dakota appeal.

Affirmed.

*William Langer,* Attorney General, *George K. Foster,* Assistant Attorney General, and *H. A. Bronson,* for appellants.

Section 3 of chapter 112 of the Laws of North Dakota for 1915 requires the clerk of the district court to pay such fees into the general

fund. Mulcrevy v. San Francisco (1914) 231 U. S. 669, 58 L. ed. 425, 34 Sup. Ct. Rep. 260; Berkshire County v. Cande (Mass.) 109 N. E. 838; Barron County v. Beckwith, 142 Wis. 519, 124 N. W. 1030.

The state treasurer shall not receive any fees nor rewards aside from his annual salary. Comp. Laws 1913, § 149.

There is absolutely no duty on the part of the state treasurer, the state, or anyone else to return the whole or any part of the $25,000 or its interest to the company, unless such duty is created by the provisions of §§ 4899 and 4900 of the Compiled Laws of 1913. Jones v. Moore, 198 Fed. 304.

The state treasurer is at liberty or has the option under certain circumstances to pay interest on securities at his election. Sutherland, Stat. Const. 1st ed. § 460.

It is only where an answer admits or leaves undenied the material facts stated in the complaint that a judgment can be rendered on the pleadings. Botto v. Vandament, 67 Cal. 333.

A public officer is not liable for interest or profits made by him from the public funds, in the absence of the statute charging him therewith, although the law makes him criminally liable for putting the money out at interest or making a profit from it. People v. Walsen, 15 L.R.A. 456; Maloy v. Bernalillo County Comrs. 52 L.R.A. 126; State ex rel. Nary v. Dunbar, 20 L.R.A.(N.S.) 1015.

A mere stakeholder is not liable for interest upon money in his hands although he makes profit by use of such money. Jones v. Mallory, 22 Conn. 386; Buckman v. Pitcher, 13 Barb. 556; Havens v. Church, 62 N. W. 149.

Where one receives the proceeds of certain notes, and is not liable for an accounting until the happenings of such contingency, he is not liable for interest until after such contingency. Bellevue Mills Co. v. Baltimore Trust Co. 214 Fed. 817.

On a bill of interpleader by a party claiming the title to certain funds, interest is not allowed during the litigation, where the money is deposited in a bank and the bank paid on said deposit 3 per cent. Delta & P. L. Co. v. Sherwood, 187 Ill. App. 167.

Money received for the use of another. 37 Century Dig. 1915, 2046; 29 Century Dig. 23, 274.

Where money is paid by mistake and there is no fraud or surprise,

interest is not allowed. Claim v. Adams, 1 Dall. 52, 1 L. ed. 33; Ashurst v. Potter, 29 N. J. Eq. 625.

Where money is held as bail or on deposit, interest is not chargeable on such fund. Haswell v. Farmers Bank, 26 Vt. 100; Duncan v. Morgette, 25 Tex. 245.

*Theodore Koffel,* for John Steen and John Steen as State Treasurer.

The debt created by such deposit, being wholly paid and extinguished, the interest being a mere incident to the debt, cannot exist without it, and the debt being extinguished, the interest must necessarily be extinguished too. 15 R. C. L. 14, notes 9 & 10; Bennett v. Federal Coal & Coke Co. 40 L.R.A.(N.S.) 588; Mason v. Callender, 72 Am. Dec. 102.

Interest is the compensation allowed by law or fixed by the parties for the use or forbearance of money or as damages for its detention. 15 R. C. L. 3.

Interest is the creature of statute, and cannot be recovered unless authorized by it. Pekin v. Raynolds, 83 Am. Dec. 244.

Interest is not recoverable except upon a contract, express or implied, to pay it, or as damages for the unreasonable detention of money which the party was obliged to pay. Evats v. Nason, 11 Vt. 122; Abbott v. Wilmot, 22 Vt. 437; Wood v. Smith, 23 Vt. 706.

Interest is recoverable only by contract or under express provision of the statute. Forschirm v. Mechanics' & Traders' Bank, 122 N. Y. Supp. 168.

Interest is recoverable only when expressly reserved by contract or implied by the nature of the promise. United States v. Sanborne, 135 U. S. 281, 34 L. ed. 112; Sneed v. Wister, 5 L. ed. 717; United States v. Knowles, 106 U. S. 537.

*Sullivan & Sullivan,* for respondent.

The depositary may not use the thing deposited or permit it to be used for any purpose without the consent of the depositor. Comp. Laws 1913, § 6021; Rhea v. Brewster (Iowa) 107 N. W. 940; 5 R. C. L. 630, par. 15.

If a person with whom a deposit is made uses the fund, he must account to the depositor for the income, profits and advantages derived by him from the pledged property. 31 Cyc. 825.

ROBINSON, J. This is an appeal by John Steen and by the state of North Dakota from a judgment against them, in favor of the insurance company, for $1,250, and interest at 6 per cent. The $1,250 is the accrued interest received on $25,000 which the insurance company deposited with John Steen in March, 1913, as security for loss. The deposit was under the statute, Comp. Laws 1913, § 4896. The interest money was claimed by the state and by John Steen, and each appealed from the judgment. On the pleadings and the conceded facts the trial court found that John Steen received interest on the deposit amounting to $1,250, that the same is the property of the plaintiff, and that judgment should be given for same in favor of the plaintiff and against each of the claimants. On April 14, 1916, judgment was entered accordingly. By statute it is provided thus: So long as the deposit required by this article is kept good and the depositing company is solvent, the state treasurer may permit the company to collect interest on the securities so deposited. § 4900.

Counsel for Steen and the state contends that this statute does not apply to the withdrawal of interest money. Hence, he says, there is absolutely no duty on the part of the state treasurer, the state, nor any-one else to return the whole or any part of the $25,000 or the interest to the company, unless such duty is created by the statute. That is an extremely narrow view of the legal and moral duty of a depositary. The counsel forgets that when one gets hold of money or property of another, unless he has a legal right to it, he is bound to return it regardless of any statute; he is bound to return to the owner, if known, money or property that he finds or picks up in the street, though the statute does not provide that he must do so. And, of course, it is not for the state in such a case to play tweedledum and tweedledee by claiming and insisting on the money and then appealing and objecting to the form of the judgment. The state might well have disclaimed the money, and then there would have been no judgment against it. Now it is manifest that the accruing interest follows the principal, and that when the insurance company concluded to retire from doing business in the state it was entitled to its money, the $25,000, with the accrued interest. There is no principle of law or equity on which either Steen or the state can justly make any claim to the interest. True it is that the ex-treasurer was not legally obliged to put the money at interest,

but he was under a moral obligation to do it. In the parable of the talents the person with one talent hid it in the earth and on the return of his Lord he dug it up and said: "Lo! Here thou hast what is thine." For this he was subjected to severe punishment. So, in disregard of the rights of others, the ex-treasurer might have buried or put in a vault the $25,000. The manly, moral, and proper thing for him to do was to put it safely at interest, and then to pay over the accrued interest with the principal. The judgment in favor of the depositor is clearly right.

Judgment affirmed.

COOLEY, J. I concur in the result.

BRONSON, J., being disqualified, did not participate, Honorable CHAS. M. COOLEY, of First Judicial District, sitting in his stead.

CHRISTIANSON, Ch. J. (concurring specially). Section 4896, Comp. Laws 1913, provides: "No mutual insurance company hereafter organized under the laws of this state or now or hereafter organized under the laws of any state or country, shall engage in the business of hail insurance in this state without first depositing and thereafter keeping on deposit with the treasurer of this state the sum of $25,000 in money, or in lieu thereof bonds of this state or of the United States of the par value of $25,000; provided, that domestic mutual hail insurance companies in lieu of said deposit shall be required to file a bond in the office of the commissioner of insurance in the sum of $25,-000, conditional for the carrying out of its contracts and obligations incurred by its policies; said bond to be satisfactory as to form and surety to the insurance commissioner." Section 4897 provides that "said money or securities so deposited shall be and remain in the hands of the treasurer of this state as a fund to secure the payment of all losses occurring under all policies or contracts for hail insurance, made by such company in this state, or covering property situated within the state. And the treasurer of this state shall not permit said deposit or any part thereof to be withdrawn by said company from his custody except as hereinafter provided." Section 4899, Comp. Laws 1913, provides that when any company which has made such deposit desires

to relinquish the transaction of business in this state, it may be permitted to withdraw such deposit upon application to the commissioner of insurance; that when the commissioner of insurance becomes satisfied that all liabilities under policies and contracts have been fully paid and extinguished, he shall "file a certificate to that effect with the treasurer of the state, who shall thereupon deliver such deposit to said company, or its assigns."

In March, 1913, plaintiff deposited $25,000 in cash with the state treasurer, under the provisions of § 4896, supra. The defendant Steen was elected state treasurer at the general election held in November, 1914. Upon his qualification in January, 1915, his predecessor in office turned over to him the said sum of $25,000. Steen afterwards deposited these moneys in various banks. The plaintiff subsequently withdrew from the state, and was permitted to withdraw its deposit. The defendant Steen turned over to it the amount of the original deposit. The plaintiff, however, insisted that it was also entitled to receive whatever interest had been earned thereon. From statements made upon the oral argument it appears that Steen submitted the matter to the then attorney general, and was advised that considerable uncertainty existed as to who was entitled to such interest, and that it belonged either to the plaintiff, to the state, or to the defendant Steen personally. This action was thereupon brought. The action was originally against Steen individually and as state treasurer, later the state of North Dakota was added as a party defendant. The matter was submitted to the court upon the pleadings. The trial court ordered judgment for the plaintiff. The state and Steen have both appealed, so the entire controversy is before this court.

The questions presented in this case are somewhat perplexing. The various authorities cited by counsel for the contending parties are of little or no value, for they deal with entirely different situations. There are many authorities dealing with the right of state treasurers and other custodians of public funds to receive and appropriate to their own use interest on such funds. The conclusions reached by the various courts are far from uniform. Some of the cases hold that it is not a matter of public concern what use was made of the moneys while in the hands of the treasurer; that he is liable for the principal alone, and that his liability ceases when he accounts for the principal. See

Rock v. Stinger, 36 Ind. 346; Shelton v. State, 53 Ind. 331, 21 Am. Rep. 197; Com. v. Godshaw, 92 Ky. 435, 17 S. W. 737; State v. Walsen, 17 Colo. 170, 15 L.R.A. 456, 28 Pac. 1119; Maloy v. Bernalillo County, 10 N. M. 638, 52 L.R.A. 126, 62 Pac. 1106; Renfroe v. Colquist, 74 Ga. 613; Chase v. Monroe, 30 N. H. 427, 433. Other cases hold that where the treasurer has received interest on public funds he must account for the interest as well as for the principal. See cases cited in note to Adams v. Williams, 30 L.R.A. (N.S.) 855. Counsel for the plaintiff and for the state have cited and rely upon these latter decisions. While they tend to support the contentions of the plaintiff, they clearly do not support the contentions of the state. For these cases merely hold that the interest follows the principal; and that where a custodian has received interest on funds belonging to the public he must pay such interest over to the owner of the money on which the interest has been earned. But the moneys involved in this case were not state funds. They did not belong to the state. They belonged to the plaintiff. The plaintiff had placed them in the hands of the depositary designated by the legislature, to be held as security for the payment of losses which might arise upon insurance contracts made by the plaintiff. The money would eventually either be returned to the plaintiff, or paid to those for the protection of whom it had been deposited. Under no circumstances would the state of North Dakota become the owner of the moneys. The state treasurer was custodian of the moneys because the legislature had designated him. The legislature might as well, if it had seen fit to do so, have required the deposit to be made with some other state or county official, or with banks or trust companies in this state. Thus, securities of domestic life insurance companies are deposited with the commissioner of insurance. Comp. Laws 1913, § 4896. In State ex rel. Olson v. Jorgenson, 29 N. D. 173, 150 N. W. 565, this court considered the status of moneys in the hail insurance fund, and the functions of the state treasurer and state auditor with respect thereto. The court said: "The fund known as the hail insurance fund is composed of moneys which do not belong to the state, and which are not state funds. . . . The treasurer is the custodian of the fund, not a state fund, but a fund belonging to those who contributed it for the purpose named. The commissioner of agriculture and labor is made the commissioner of hail insurance, and is given

charge of the bookkeeping and the administrative features necessary to carry out the purposes of the act. . . . He acts not on a fund raised as state funds are provided, but by reason of the legislative assembly having permitted him and attempted to authorize him to act in another and different capacity, when owners of crops voluntarily request him so to do and make the necessary payments. In the same sense the treasurer is the custodian of the fund. The legislature might with equal propriety have made any other state, county, or township officials the custodians and administrative officials of this or corresponding funds, or it might undoubtedly have constituted some other official, and very likely a private individual, the administrative officer of the fund and business." 29 N. D. 177. This reasoning and language is even more applicable to the moneys deposited by a foreign mutual hail insurance company under § 4896, supra. A deposit made under that section is and remains the property of the company making the deposit. It never becomes the property of the state. I am entirely satisfied that the state has no right to the interest earned upon the funds in question.

Does the interest belong to Steen or to the plaintiff? The plaintiff was not required to deposit money. It might have deposited securities. It might, also, at any time have withdrawn all or any part of the moneys, and deposited securities in lieu thereof. Comp. Laws 1913, § 4900. It received back the full amount of its original deposit, just as soon as it was entitled to do so under the law. The only legal duty which Steen owed to the plaintiff was to safely keep the deposit and return it in accordance with the stipulations which the law attached thereto. He would have fully discharged his duty by keeping the moneys deposited, and returning them to the plaintiff. He was under no legal or moral obligation to earn any interest on the deposit. In depositing the moneys in banks he—not the plaintiff or the state—assumed all risk. If any of the banks had failed, and loss ensued, Steen would have been liable for the loss. The interest was earned by reason of the fact that Steen deposited the funds in banks and assumed the risk incident thereto. The insurance company owned the money upon which the interest was earned; Steen assumed the risk which made it possible for the money to earn interest. There is much force in the argument that under these circumstances the interest earned belongs to Steen, and my mind is not altogether free from doubt upon the point.

43 N. D.—20.

While this is so I am not prepared to say that the judgment appealed from is erroneous, but am rather inclined to the view that the interest earned belongs to the insurance company, as the owner of the fund.

BIRDZELL, J. (concurring specially). I concur in the affirmance of the judgment appealed from. As the other opinions filed do not state the basic reason which has led the writer to this conclusion, a brief statement is deemed necessary. Mr. Justice Grace, in his dissenting opinion, has made it clear that the interest on the deposit did not become the property of the officer under whose direction the money was placed on deposit, and it seems to me that his claim is in no wise strengthened by the fact that he went beyond any duty imposed upon him by statute and incurred personal risk in so handling the money. Neither, in my opinion, is it strengthened by the fact that he acted reasonably in so doing. In so far as the acts of the officer were official they were the acts of the state and in so far as they were unofficial they were wholly unauthorized, either by the plaintiff or by the state, and could not, therefore, afford a basis for a personal claim.

The ownership of the fund, then, resolves to a question between the plaintiff and the state of North Dakota, and this question in turn depends upon the legal relationship which arose upon the making of the deposit. If the money were advanced upon the general credit of the state, as a depositor deposits money in a bank, it would be perfectly clear that the relation of debtor and creditor would exist from the time the deposit was made, and that the plaintiff would have no claim to any increment that should accrue prior to the termination of its license to do business in the state. But this is not a general deposit on the credit of the state; it is a special deposit which the state holds as trustee for certain purposes, and the legal relationship between the state and the depositor in these circumstances is that of trustee and *cestui que trust*. In other words, the state holds the fund in trust for the payment of claims, and upon the termination of the right of the plaintiff to do business, and upon its withdrawal after payment of claims in trust for the plaintiff. It seems that this trust relation is expressly recognized by § 4901, Compiled Laws of 1913, which reads: "Any insurance company which has made such deposit, or the commissioner of insurance in the name of the state, or any person entitled to

the benefit of such deposit, may at any time institute in the district court of Burleigh county legal proceedings against this state and other parties properly joined therein to enforce, administer or terminate the trust created by such deposit.  The process in such suits shall be served upon the insurance commissioner of this state, who shall appear and answer in its behalf, and he and the treasurer of this state shall perform such orders and decrees as the court may make therein."

It will be seen that this statute recognizes the right of an insurance company to bring proceedings against the state to secure the administration or termination of the "trust created by such deposit."  This, to my mind, is a recognition of the obligation of the state to act with respect to this fund simply as a trustee, and when the state acts as a trustee it necessarily incurs all of the obligations of a private trustee. It is elementary that a private trustee cannot enrich himself out of the trust estate, and that he is not entitled to any increment or interest arising out of an unauthorized use of the trust property.  Comp. Laws 1913, §§ 6282 and 6292.  This principle applies as well to the state as a trustee, and is conclusive against its claim.

Were it not for the recognition of the trust relationship assumed by the state, it would seem to me that the right of the insurance company would be measured by the statute, § 4899, Compiled Laws of 1913, which authorizes the withdrawal of the deposit, as indicated in the dissenting opinion.

GRACE, J. (dissenting).  Appeal from the judgment of the district court of Burleigh county, North Dakota, W. L. Nuessle, Judge.

A concise statement of the facts in this case will clearly present the issues involved therein.  The Des Moines Mutual Hail & Cyclone Insurance Association is a mutual hail insurance company organized under the laws of the state of Iowa, and has its principal office in the city of Des Moines in that state.  It desired to do business in the state of North Dakota.  In pursuance of § 4896, Compiled Laws 1913, in the month of March, 1913, it deposited with the treasurer of the state of North Dakota, one Mr. John Steen, the sum of $25,000 in money to secure losses occurring under its policy contracts for hail insurance made by it in the state of North Dakota.  Mr. Steen became treasurer of the state of North Dakota about January 1, 1915.  Between Jan-

uary 6, 1915, and April 14, 1916, he, as state treasurer, deposited in different banks in the state of North Dakota the said $25,000 and received from them certificates of deposit which drew interest at the rate of 4 per cent per annum. It is conceded that such banks were theretofore designated as legal depositaries. There had accrued as interest on such deposits in such banks until the 14th day of April, 1916, the sum of $1,250. On the last-mentioned date, the insurance company withdrew from the state and received the $25,000 which it had deposited with the state treasurer as aforesaid. It was repaid to it. The sum of $1,250 interest above referred to was received by John Steen as state treasurer, but the same has not been by him paid in to the state treasury of the state of North Dakota. The insurance company claims the $1,250 interest item belongs to it, and that it is entitled to a judgment for that amount against John Steen personally and against him as treasurer of the state of North Dakota and against the state of North Dakota. Mr. Steen claims that he personally is entitled to the $1,250 interest money; that neither the state nor the insurance company is entitled thereto. The state of North Dakota maintains that the money, the right to which is in dispute, is not the property of the insurance company nor the property of John Steen personally, but that it belonged to the state of North Dakota; that it is entitled to a judgment against John Steen for the full amount of $1,250. In this connection the state contends that the insurance company is not entitled to recover anything in this action. The foregoing are all the material facts, and as such are conceded by all the parties to the controversy.

When the matter came on for determination in the trial court, the plaintiff made a motion for judgment on the pleadings. The granting of this motion was strenuously opposed by both the state and Mr. Steen. The court, however, granted the motion of the plaintiff and awarded it judgment on the pleadings against John Steen personally and as treasurer of the state of North Dakota and the state of North Dakota in the sum of $1,250. The complaint is substantially in accordance with the facts we have outlined; also the answer and cross complaint of the defendant state of North Dakota and the defendant Steen contain allegations of fact largely similar to that of the complaint, the principal difference being that each of the contending parties claims the right to the $1,250. The issue presented is: Who is lawfully en-

titled to the $1,250 interest which had been earned as aforesaid? Upon a thorough consideration of the matters involved in this case and of the pleadings, we are convinced that the trial court was in error in ordering judgment on the pleadings in favor of the plaintiff. We are of the opinion that this clearly appears from a thorough analysis of the law and the facts which are presented in this case.

In order to properly determine that the trial court was in error in granting plaintiff judgment on the pleadings, it will be necessary to examine the entire case as if it were here presented on its merits and in the light of the conceded facts. Section 4896, so far as applicable to this case, is as follows: "No mutual insurance company hereafter organized under the laws of this state or now or hereafter organized under the laws of any state or country, shall engage in the business of hail insurance in this state without first depositing and thereafter keeping on deposit with the treasurer of this state the sum of $25,000 in money, or in lieu thereof bonds of this state or of the United States of the par value of $25,000."

This section was amended by the legislature in 1915 by the enactment of chapter 174, Laws of 1915, permitting the deposit of bonds or first mortgages upon lands in North Dakota in lieu of the cash deposit. We think it must be clear that, in depositing cash under § 4896, it could not have been contemplated either by the company so depositing or the state that the company should receive or the state pay any interest thereon. This more clearly appears when we consider that that section was amended so as to permit the depositing of additional securities in lieu of cash and in lieu of securities other than those mentioned in the § 4896.

Section 4897 is as follows: "Said money or securities so deposited shall be and remain in the hands of the treasurer of this state as a fund to secure the payment of all losses occurring under all policies or contracts for hail insurance, made by such company in this state, or covering property situated within the state. And the treasurer of this state shall not permit said deposit or any part thereof to be withdrawn by said company from his custody except as hereinafter provided."

Section 4900 is as follows: "So long as any deposit required by this article is kept good, and the depositing company is solvent, the state treasurer may permit the company to collect the interest on the secur-

ities so deposited, and from time to time to withdraw any such securities on depositing with him others of the value and character required by this article."

It is clear from the foregoing sections that a foreign hail insurance company desiring to do business in the state of North Dakota would first be required to comply with the laws of the state of North Dakota relative thereto before it could be admitted to do business within the state. In its compliance with such laws, it would be dealing with the state. The contract would be between the state of North Dakota in its sovereign capacity and plaintiff. The sovereign power, the state, speaking through its law contracts that the plaintiff may transact its business within the state upon the deposit of $25,000 with the state treasurer as a fund to secure the payment of losses in the manner prescribed in § 4897, and upon otherwise complying with the law relative thereto.

It will be noticed from the examination of § 4899, Compiled Laws 1913, what the requirements are, and in what manner they must be complied with, when the foreign hail insurance corporation desires to cease the transaction of business within the state, after having made deposit above required and after having entered on the doing of its business within the state. When the company which has complied with these requirements ceases to do business within the state, and withdraws from the same, and such withdrawal is in accordance with the requirements of law relative thereto, it is entitled to receive back $25,000, or its deposit theretofore made. The insurance company in this case, in all the proceedings and steps by it taken to comply with the law and come into the state of North Dakota to do business, is dealing with the state of North Dakota, and in relinquishing its right to do business within the state and in its legal withdrawal from the state by compliance with all the laws of the state of North Dakota relative thereto, it is also dealing with the sovereign power of the state of North Dakota. The state of North Dakota exercises its sovereign powers not directly, but by and through well-defined agencies. The sovereign powers which are exercised by the state are many and varied, and are exercised through various departments of state, such as state treasurer, state auditor, state superintendent of public instruction, etc. Such officials are placed in those positions by the electorate of the state

for a certain period of time fixed by law, and for that time to them is delegated certain authority and power to be exercised by them for and on behalf of the state, by and through their respective departments of state. When so acting, while within the scope of their duties as defined by law, or when performing such duties as are incident to their department, whether such duties are defined by law or not, they are representing and acting for the state only. In the discharge of such duties within the scope of their authority, their acts are not personal, but official. They are but the instrumentalities by and through which the state functions. In the exercise of authority and power delegated to them, and in the execution of their respective duties within the scope of their authority, they have no personality other than an official one. In other words, in the execution of their respective duties, they act officially for and on behalf of the state, and not personally for and on behalf of themselves.

In the case at bar, when the $25,000 was received and deposited, it was received by the state through the treasury department, and when it was paid to the state treasurer, he received it for the state, and such reception was a part of his official duties. He received it not in his individual, but in his official, capacity. After the $25,000 was received into the state treasury, whatever Mr. Steen did in the way of taking care of said money and in keeping it safely, or in depositing it with banks which had been designated as legal depositaries and receiving therefor interest-bearing certificates of deposit, was done by him while acting in his official capacity as the treasurer of the state of North Dakota for and on behalf of the state. No other reasonable deduction can be drawn from the facts in the case and from the law of the case as found in the sections above quoted. Those sections are the law of this case. All of Mr. Steen's acts thus being official acts within the line of his duty as state treasurer, it is clear that he as an individual or as state treasurer is not entitled to receive as his own, any of the accrued interest upon such certificates of deposit.

The only remaining question to be considered in this case is: Which of the two remaining parties is entitled to receive the $1,250 interest money, the state or the insurance company? It is conceded the insurance company has received back the full amount of money which it deposited with the state treasurer. That is all it is entitled to receive

back. That is all the law above referred to states it shall receive back. When the state received the $25,000, the only obligation which it entered into with the insurance company was to return it to the insurance company when it withdrew from the state in accordance with the provisions of law. The state was under no obligations to place the money at interest; it was under obligation to keep it safely for the purposes for which it was deposited with the state, during the time the insurance company was doing business within the state, and when it withdrew, to refund the money to it in accordance with the law above stated. It is true that if the insurance company had deposited bonds or first real estate mortgages of the character required by law instead of the money, the state treasurer could permit the insurance company to collect the interest on the security so deposited, but in doing so, the treasurer would be but complying with the requirements of law, and had the company deposited bonds or mortgages in lieu of money, it would have been part of the contract under the law that the insurance company had a right to the interest which accrued upon such bonds during the time they were deposited with the state. The company had the right under the law to deposit securities instead of cash, and, in that event, the treasurer could have permitted it to collect the interest on such securities so deposited, all of which makes it clear that a deposit of cash under § 4896 does not entitle the company to receive any interest on such deposit. In this case, however, bonds or mortgages were not deposited, and it does not follow because the company would be entitled to receive the interest on them if they had been deposited, that it is equally entitled to receive any interest which had accrued on the money which was placed on deposit by the state in its legal depositaries. The law does not say the company is entitled to receive any interest on money when so deposited, and this being true, it is entitled to recover none. It complied with the law and deposited the money. It was admitted into the state for the purpose of transacting its business therein. It became the duty of the state to safeguard such money. It did so by depositing it in legally designated depositaries of the state. The state assumed the risk and burden of keeping said money safely after it had been once received by it into the state treasury; to safeguard it by placing it in legal depositaries theretofore designated by proper authority, and when such money was deposited in such legally designated depositaries the state treasurer

was not liable on his bond if any part of the same became lost through the failure or bankruptcy of any of the depositaries. In such case, the state would be the loser. Comp. Laws 1913, § 372. No doubt the state, to minimize its risk, distributed the money among many depositaries, as will be seen from the list of depositaries which are shown by the records in this case.

The state was to the trouble and expense of placing it in its depositaries. It had assumed the risk of safely keeping the money to secure it for the purposes for which it was deposited, and to return it to the insurance company under the conditions specified in the law relative thereto. Under the law is assumed no other duty toward the plaintiff. The state cannot be held to be under obligations to perform any other duty than that specified in the law as found in the sections above set forth. All other obligations it was under by reason of said law have been wholly performed by the state. There is no other law applicable to this case. That law was enacted for the purpose, and with the intent to set forth and fix the duty and obligation of such corporations as the plaintiff, which desire to be admitted to do business within the state, and also sets forth the corresponding duties and obligations of the state to such corporations. The plaintiff having, in a proper manner as required by law relative thereto, withdrawn from the state, the state was under no other obligations than those it assumed in the law; that is, to return to the plaintiff the amount deposited subject to the requirements of § 4899, above referred to. It must also be borne in mind that the admission of the plaintiff within this state to do business and all the proceedings had with reference to its admission, the payment of the money into the state treasury and thereafter the state keeping and safeguarding it in the manner above set forth, were all done for the plaintiff's interest in the furtherance of its business. The state, as such, would receive no benefit other than what had incidentally accrued to it in the safeguarding of the $25,000 by placing it upon deposit as we have seen, and upon which deposit had accrued the interest in dispute, and which the law does not provide shall be returned to the plaintiff. The state has complied with all its obligations to the plaintiff, and should be and is under no further liability to it. We have examined all the authorities cited in the case, but we are fully convinced that the law which must govern this case is that of our statute above set forth.