**YOUNG v. PEQUEST DAIRY, Inc.**

District Court, D. New Jersey.

June· 7, 1935.

Riker & Riker (by Theodore McC. Marsh) and Bilder, Bilder & Kaufman (by Samuel Kaufman), all of Newark, N. J., for receivers.

David T. Wilentz, Atty. Gen. (by Edward W. Currie), for Secretary for Agriculture.

Smith & Smith (by S. C. Smith, Jr.), all of Phillipsburg, N. J., for New Jersey Farmers Creditors' Committee.

FORMAN, District Judge.

Pursuant to Chapter 74, New Jersey Laws of 1917 as amended and supplemented (Comp.St.Supp.N.J. 1924, § 81—153E(1) et seq., Comp.St.Supp.N.J. 1930, § 81—153E (8), N.J.St.Annual 1931, § 81—153E(3) on January 3, 1934, Pequest Dairy, Inc., applied for its license to do business as a milk dealer, and filed with the Secretary for Agriculture of the state of New Jersey, a surety bond of the Fidelity & Casualty Company of New York in the amount of $12,500, and deposited Liberty bonds in the amount of $6,340, to be forfeited and distributed as set forth in the said bond upon breach of the conditions provided in the said act, which is as follows:

"A license shall not be issued as provided in this section unless and until the applicant shall file with the Secretary for Agriculture as herein provided, a good and sufficient surety bond executed by a surety company duly authorized to transact business in this State, in a sum not less

than one and one-half times the estimated maximum monthly indebtedness of the applicant to the parties or persons from whom he may purchase or receive, or may have purchased or received, milk or cream, or unless the applicant shall be relieved from such requirement as hereinafter provided. Such bond shall be approved as to its forms and sufficiency by the Secretary for Agriculture.

"Such applicant may in lieu of such bond deposit with the Secretary for Agriculture money or securities in which banks may invest the moneys deposited therein, as provided by law, in an amount equal to the sum secured by the bond required to be filed as herein provided.

"The bond required to be filed hereunder shall be given to the Secretary for Agriculture in his official capacity and shall be conditioned for the faithful compliance by the licensee with the provisions of this act and for the payment of all amounts due to persons who have sold milk or cream to such licensee, during the period that the license is in force. The money or securities deposited with the Secretary for Agriculture as above provided shall constitute a separate fund, and shall be held in trust for, and applied exclusively to, the payment of claims against the licensee making such deposit, arising from the sale of milk or cream to such licensee.

"Upon default by the licensee in the payment of any money due for the purchase of milk or cream, which payment is secured by a bond or a deposit of money or securities as hereinbefore provided for, the creditor may file with the Secretary for Agriculture, upon a form prescribed by him, a verified statement of his claim. If such creditor shall have reduced such claim to judgment, or shall thereafter and before the commencement of the action by the Secretary for Agriculture, as hereinafter provided for, reduce such claim to judgment, a transcript of such judgment shall also be filed with the Secretary for Agriculture.

"Such statements may be filed at any time during the period of the license for purchases made during such period and within ninety days from the termination of such period.

"After the expiration of ninety days from the termination of any license period the Secretary for Agriculture shall, by proper action wherein all such creditors and any surety upon any bond given as hereinbefore provided for and the licensee shall be parties, proceed to determine the amount due each creditor, and the judgment rendered in such action shall be enforced ratably for such creditors against the surety on the bond, if one there be, or against the moneys or securities deposited as hereinbefore provided for. If any creditor shall have reduced his claim to judgment such judgment shall be presumptive proof of the amount due such creditor in any action brought by the Secretary for Agriculture as hereinbefore provided for.

"Every bond given pursuant to the provisions hereof shall be applicable, in the first instance, to the payment of all claims arising during the license period for which such bond shall continue, and filed either during such period or within ninety days after the expiration thereof. If all such claims shall be paid the balance available upon such bonds shall be devoted to the extinguishment ratably of claims arising during such license period, but for which statements shall not have been filed until after ninety days after the expiration of such period.

"All moneys and securities, deposited as herein provided for, shall be applicable, in the first instance, to the extinguishment of claims, properly filed, arising during the license period for which such moneys or securities were originally deposited, and if, after the extinguishment of such claims, there shall be a surplus remaining, such surplus shall be devoted to the extinguishment of claims arising during any preceding license period which were properly filed as hereinbefore provided, all claims for any one license period to be of a parity. Any surplus remaining after the extinguishment of such prior claims shall be added to the moneys or securities then on deposit with the Secretary for Agriculture, or, if there be at that time on file with the Secretary for Agriculture a bond given pursuant to this section, or if there be then on deposit with the Secretary for Agriculture additional moneys or securities deposited as herein provided for, and if such bonds or such moneys or securities, as the case may be, shall, in the opinion of the Secretary for Agriculture, be sufficient, such surplus shall be returned to the licensee." 1 Cum.Supp.Comp.St.N.J. 1924, § 81—153E(1) p. 1422, beginning at page 1423 et seq.

Pequest Dairy, Inc., was thereupon licensed and continued to do business there-

under until June 19, 1934, when receivers were appointed for it by this court. At that time it owed over two hundred milk producers of this and other states more than $100,000 for milk and cream delivered to it, and they remain unpaid. In addition, there are general creditors holding claims of substantial amount.

Many producers protected by the bond and securities in the hands of the Secretary of Agriculture have now filed claims with him to enforce their rights against the property in his hands and they have also applied to the receivers to share in the distribution of the general assets of the corporation, although no claim was filed with the secretary within the required ninety-day period.

The receivers of Pequest Dairy, Inc., have petitioned the court to direct the Secretary for Agriculture of New Jersey to deliver to them the bond and the liberty bonds deposited as security as aforesaid in order that they may realize upon them and distribute the proceeds thereof. In this application they are joined by counsel claiming to represent approximately 80 per cent. of the number of such producers.

In the event that the Secretary for Agriculture should be directed to make delivery of the securities pursuant to their petition, the receivers seek instructions as follow:

"1. Are non-resident creditors entitled to share equally with resident creditors in the distribution of the proceeds of the securities?

"2. In view of the fact that no claims were filed within the ninety day period, how shall they determine what claims filed after that date are entitled to share in the distribution of the proceeds?

"3. Are the creditors who have interests in the securities to be treated as secured creditors, as in bankruptcy proceedings, and entitled to file as against the general assets only for an amount due, after crediting on their obligation such sum as they may realize from the securities, or should the funds be treated as separate and distinct entities having no relationship to one another?"

█ The first question to be determined, therefore, is: In this proceeding has the court power to direct, in a summary manner, the Secretary for Agriculture to deliver to the receivers herein, the bond and securities posted with him, for distribution of the proceeds thereof?

The receivers and the milk producers above mentioned have appeared and argued the proposition affirmatively, while the Attorney General, on behalf of the Secretary for Agriculture, has taken the position that the court has no such power.

The Secretary for Agriculture, by the statute (supra), is made a trustee for milk producers who are not paid by dealers for milk delivered by them. Generally speaking, upon default by such a bonded dealer, he is directed to liquidate the security and to distribute the proceeds to the creditors in ratio to their losses in a "proper action."

Such "proper action" would probably mean a suit in the Court of Chancery of New Jersey in the nature of an interpleader action. Service would have to be made upon the two hundred or more creditors, their testimony taken before a master, final determination had as to what each creditor should have allowed upon his claim and distribution made to him.

Meanwhile the receivers would be obliged to halt their distribution because it will be necessary to ascertain what portion of loss of such creditors will be covered by the proceeds of the security. This amount would have to be deducted from the claim filed with the receivers because the actual loss of such creditors will be reduced by the amount they receive in such proceedings. No determination of any dividend to any creditor in the receivership can be calculated until the final termination of such proceedings as may be taken by the Secretary for Agriculture, and the pause would be both lengthy and expensive.

Meanwhile the receivers are even now about ready to render their final accounting. It would require but little time for the claims on file with the Secretary for Agriculture to be checked with the claims on file with the receivers and with the books of the debtor company in their possession. It is entirely possible that no reference would be required to take testimony in any claim, and the dividends could all be calculated and paid in one operation.

The Attorney General has cited cases to support the proposition that where a statute defines the course of procedure for the distribution of a fund in the custody of an officer of the state, no court can divest him of his duty in this respect and direct that such officer deliver such fund to receivers for distribution, and, for fear of creating precedent and ceding jurisdiction of a state bureau, properly resists the ap-

plication. However, in no case cited by him was a federal equity court concerned, and in no case cited were the basic circumstances and conditions so susceptible of effective administration by such a court.

There is here no fund inherently belonging to the state. The fund in the possession of the secretary belongs to the creditors provided for in the statute and he is simply charged with the distribution thereof to them. How shall he distribute them? The only information in the statute as to the procedure to be followed is that he shall do so in a "proper action." The present liquidation proceedings in this Court furnish him with the vehicle for such "proper action." Such course is therefore not repugnant to the statute, and it is particularly desirable that the machinery of this court now moving toward final distribution to all creditors shall continue in its course with the additional burden of the distribution of the security, but without interruption.

There is ample power in this court to extend its jurisdiction to comprehend this incidental measure in the attainment of its terminal objective—the final and equitable determination of all claims in the suit.

"A federal court sitting in equity has the plenary jurisdiction of the English Court of Chancery, and one of the inherent powers of each court is to take and to hold by its own hands, by its receivers, the control and the possession of mortgaged, pledged, and trust property during the pendency of suits concerning it in those courts whenever in the exercise of a wise judicial discretion these courts are of the opinion that the most speedy and perfect administration of justice and the rights of the parties interested in the property will be best secured by such action." Morrill et al. v. American Reserve Bond Company (C.C.) 151 F. 305 at page 313.

Most of the more than two hundred creditors are sorely in need of whatever cash they are to realize from these proceedings. By affording them the jurisdiction of this court the fund will be administered by one agency, without duplication according to the most inexpensive and expeditious manner.

■ Of course this fund will be administered separately and apart from other funds in the hands of the receivers, solely for the beneficiaries of such security. An estimate will be placed upon the reasonable actual cost of such administration so that the fund will not be diminished or depleted by charges which should be borne by the general estate. The Secretary for Agriculture may be heard as to the reasonableness of such limit of charge against the fund.

Upon an order duly signed, the Secretary for Agriculture of the state of New Jersey will therefore deliver to the receivers herein the bond of the Fidelity & Casualty Company of New York in the sum of $12,500 and the Liberty bonds in the sum of $6,340 now in his possession, so that they may distribute the proceeds thereof to the creditors entitled to the benefits of such securities.

■ Now, having decided that the fund shall be administered by the receivers, their request for instructions will be considered: Are nonresident creditors entitled to share equally with resident creditors in the distribution of the proceeds of the securities?

The bond itself contains the following provision: "Now, therefore, the condition of this obligation is such, that if the Secretary of Agriculture of the State of New Jersey shall issue to the above-named applicant the license applied for, and if the said applicant shall faithfully comply with the provisions of the said law and with all the requirements prescribed by the Secretary for Agriculture pursuant to the provisions of the said law and shall promptly make payment to the proper person or persons of all amounts due to persons from whom he has bought milk or cream during the period that the said license is in force, then this obligation is to be void; otherwise to remain in full force and effect."

It will be observed that the bond is tied to the law itself in that one of the conditions thereof is that the "said applicant shall faithfully comply with the provisions of the said law."

It is true that the body of the law itself, as in the bond, prescribes that payment is to be made to the "proper person or persons of all amounts due to persons from whom he has bought milk or cream," without a specification that such persons shall be from this state. The only indication that the Legislature intended to protect New Jersey producers appears in the title of the act. It is in this language: "An act providing for the licensing and bonding of dealers in milk or cream who purchase from or contract with producers in this State or who receive milk or cream

169

from such producers for shipment, sale or manufacture."

, The law was sponsored by Mr. Philip Wilson, Assemblyman from Sussex county in the New Jersey Legislature of 1917, and was known as Assembly Bill No. 346. No aid as to the construction to be given to it can be gleaned through an examination of the legislative minutes or the statement appended to the original bill, which was patterned after similar legislation enacted in New York in 1911.

The trend was to protect the milk producers of the various states, and the title to this law indicates that the Legislature so intended for the milk producer residents of New Jersey. Had the author of the bill used the word "of" instead of the word "in" preceding the words "this state," there could have been no doubt concerning the construction to be given the act. The words "such producers" following in the next clause are significant and bear strongly upon the proposition that the Legislature intended the law to be for the benefit of New Jersey producers.

In answer to the first request for instructions, the receivers will, therefore, regard only the New Jersey producers as participating in the proceeds of the securities.

The second request for instructions concerned the procedure with regard to the order of the payment of claims.

■ All claims were filed after the expiration of the ninety-day period provided for in the statute. The proceeds of such fund will not be sufficient to extinguish all claims. Hence the New Jersey producers will ratably share such funds on account of and in proportion to their claims.

■ So that a limit may be placed upon the time for such producers to file their claims, the order based upon this memorandum will provide for the publication of notice of a reasonable time within which such claims must be filed in order that they may participate in the proceeds aforesaid.

■ The answer to the third request for instructions has already been indicated. The question was: Are the creditors who have interests in the securities to be treated as secured creditors, as in bankruptcy proceedings, and entitled to file as against the general assets only for an amount due, after crediting on their obligation such sum as they may realize from the securities, or should the funds be treated as separate and distinct entities having no relationship to one another?

The receivers will proceed as follows:

They will determine the amount each New Jersey claimant is entitled to receive from the proceeds of the securities. Such amount will be credited upon the claim of each such creditor and the balance will be considered a claim against any general assets of the estate in their hands for distribution.

Short notice of the settlement of an order to carry out the directions contained in this memorandum should be given by the receivers to counsel for the parties who were heard in this motion.